**STATE of Missouri, Respondent,**

v.

**Joseph MATTINGLY, Appellant.**

**No. 39086.**

Missouri Court of Appeals,
St. Louis District,
Division One.

Aug. 22, 1978.

Motion for Rehearing and for Transfer
Denied Oct. 13, 1978.

Application to Transfer Denied
Dec. 18, 1978.

J. Martin Hadican, Clayton, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Stanley Robinson, Asst. Attys. Gen., Jefferson City, Courtney Goodman, Jr., Clayton, for respondent.

CLEMENS, Presiding Judge.

Defendant Joseph Mattingly has appealed his 1976 conviction for second-degree murder for which he was sentenced to fifteen years' imprisonment.

Defendant contends on appeal the trial court erred in admitting a photograph of the victim because it failed to shed any light on a material issue in the case and was so prejudicial as to outweigh its probative value. He also contends the trial court erred in overruling his motion to dismiss the information because Article I, § 22(b) of the Missouri Constitution and § 494.031, R.S. Mo.Supp.1975 denied him a trial by an impartial jury as required by both state and federal in that women shall be excused upon request. We deny both contentions.

The mother of the year-old victim testified at trial that during a weekend in November, 1975 she and defendant were teaching the baby to walk. Defendant did so by placing the baby against a door with varying degrees of force and when he was unable to walk, hit him with his hand and a belt. While repeating this procedure the next day, the baby stopped breathing. Defendant revived the baby with mouth-to-mouth resuscitation and refused to allow medical attention. The following day, the mother told defendant she was leaving and the baby started to cry. Defendant then picked the baby up, told him to stop crying, and threw him a foot or two onto a pile of blankets on the floor. The baby again stopped breathing and this time defendant's efforts to revive him were unsuccessful.

Defendant neither testified nor offered evidence. His position, apparent from the cross examination of the mother, was that he had stood the baby against the door and had accidentally dropped him on the floor. On cross examination the mother testified defendant enjoyed playing with the child, treated him as his own son, and spanked him only once before November 1975; she described defendant's attitude toward the baby when teaching him to walk was one of helpfulness.

The state called a police officer who identified the transcript of an interview with defendant. It contained statements admitting he struck the baby, whipped him with a belt, hit his legs and slapped his face. Defendant maintained he did not mean to hurt the baby.

Defendant objected to the introduction of color photographs of the victim as inflammatory. The photographs were taken after surgery but prior to autopsy and depicted frontal and back views. The objection was sustained as to the frontal view and denied as to the back view. Dr. Joseph Sudekum used the photograph in testifying the baby had multiple bruises over his entire body and had belt marks on the back of his legs. He opined the cause of death was blood clots on the brain resulting from application of force to the baby's head.

■ The trial courts have wide discretion in determining admissibility of photographs. *State v. Stevens,* 467 S.W.2d 10 [16–18] (Mo.1971). Even though a photograph may be inflammatory it is admissible if it tends to prove a material element of the state's case. *State v. Jackson,* 499 S.W.2d 467 [5–8] (Mo.1973).

■ Here, defendant was charged with second-degree murder, the elements of which are wilfulness, premeditation, and malice aforethought. *State v. Randolph,* 496 S.W.2d 257 [1] (Mo.1973). Defendant's brief acknowledges the only element not admitted by him was his intent. He contends the photograph was not probative of this element. We disagree.

■ The charged element of wilfulness requires a determination of whether defendant acted knowingly or intentionally to kill or to cause serious bodily harm. Evidence of prior mistreatment of a child may be considered in establishing the intent required for second-degree murder. *State v. Cook,* 557 S.W.2d 484 [5, 6] (Mo.App.1977). The photograph of the baby's battered body was probative of defendant's prior mistreatment and was therefore admissible on the issue of intent.

Defendant relies on *State v. Robinson,* 328 S.W.2d 667 (Mo.1959) and *State v. Floyd,* 360 S.W.2d 630 (Mo.1962) for the proposition that a photograph must be excluded if its prejudicial and inflammatory effect on the jury outweighs its probative value. These cases were distinguished by *Jackson,* supra, at [2–4]. In *Floyd,* the photograph was held to prove nothing. In *Robinson,* the photograph was obscene and offensive and added nothing to the case. Here, the photograph accurately depicted gruesome injuries and aided the state in proving the material element of intent. Where a photograph is relevant to an issue in the case it is not rendered inadmissible simply because it is inflammatory. *State v. Thurman,* 521 S.W.2d 773 [3] (Mo.App.1975).

Moreover, as in *State v. Duisen,* 428 S.W.2d 169 [1] (Mo.1967), the photograph could not have inflamed the minds of the jury any more than they were "otherwise inflamed by the uncontroverted evidence of these utterly revolting acts of the defendant." The exclusion of the frontal view, which showed the results of surgery more extensively, indicates the trial court carefully exercised its discretion. If the photographic view was shocking it was because the crime is of that sort. *State v. Moore,* 303 S.W.2d 60 [5] (Mo.1957).

■ Turning to defendant's second contention, *State v. Duren,* 556 S.W.2d 11 [5–7] (Mo.1977) is dispositive. Upholding excusing women from jury service upon their application, the court stated, at l.c. 17: "We hold the challenged Missouri constitutional provision and implementing statute are part of a facially valid jury selection system and the product of that system did not deny defendant's right to due process of law under the Fourteenth Amendment as that law embodies fulfillment of the Sixth Amendment's guarantee of an impartial jury trial in criminal prosecution."

The court in *Duren* distinguished *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), on which defendant relies, by noting its thrust was that "no longer in criminal cases may women as a class be excluded from jury service or automati-

cally exempted on the basis of sex, if as a consequence, jury venires are almost totally male." *Duren,* supra at [1]. The invalidated Louisiana provision automatically exempted women from juries and required affirmative action by women to have their names included. Section 494.031, R.S.Mo. Supp.1975, and Article I, § 22(b) of the Missouri Constitution do not automatically exempt women, but rather provide a privilege to seek exemption. *Duren,* supra, at [5–7].

In addition, we note reasonable exemptions are specifically authorized by *Taylor* "so long as it may fairly be said that the jury lists or panels are representative of the community." *Taylor,* supra, l.c. 538, 95 S.Ct. l.c. 701. The Supreme Court went on to hold: ". . . we impose no requirement that petit juries actually chosen must mirror the community and reflect various distinctive groups in the population." *Taylor,* supra, at l.c. 538, 95 S.Ct. at l.c. 702.

During the month the defendant in *Duren* was summoned to trial, the female representation produced by the system was 29.5 per cent of all veniremen summoned and 15.5 per cent of those appearing. Here, as defendant notes in his brief, female representation on St. Louis County jury panels was 39 per cent. The effect of the exemption here was not to impermissibly create an all-male venire panel. Although it did not mirror the community, it can be fairly said that the system produced female representation on jury panels which was "representative of the community."

Judgment affirmed.

SMITH and McMILLIAN, JJ., concur.