STATE of Missouri,
Plaintiff-Respondent,

v.

Stephan Lambert PADBERG,
Defendant-Appellant.

No. 50776.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 12, 1986.

Motion for Rehearing and/or Transfer
Denied Dec. 16, 1986.

Application to Transfer Denied
Feb. 17, 1987.

J. Martin Hadican, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Judge.

Defendant was convicted by a jury of murder in the second degree, § 565.004, RSMo 1978, for the death of his ten week old son, Zachary Padberg. He appeals a sentence of imprisonment for a term of twenty years. We affirm.

The issues do not question the sufficiency of evidence. Defendant and his wife,

Eva, met and dated in college. In October, 1983, Eva discovered she was pregnant. Defendant proposed marriage but did not feel that he could handle marriage and he suggested adoption. Eva rejected this alternative. They were married on December 16, 1983. Their son Zachary was born on June 19, 1984. While visiting his maternal grandparents on September 9, 1984, Zachary appeared normal. Defendant's wife testified that before leaving for work on the morning of September 10, 1984, she changed Zachary's diaper. She then noticed a bleeding wound on Zachary's penis. A similar bruise was discovered by defendant approximately one week earlier.

Eva then left for work approximately at 10:45 a.m. on September 10, 1984. At approximately 5:00 p.m. defendant telephoned his wife at work and indicated that Zachary was having trouble breathing and needed to be taken to the hospital. Together they proceeded to the hospital with Zachary who appeared very grey, ashen, his eyes were not focusing and he was erratically grasping for breath. Zachary required assistance to breathe and although there were no external signs of a head injury, a CAT scan detected a hemorrhage in the brain tissue and around the brain. Doctors at the local hospital in Cape Girardeau decided to transport Zachary to a St. Louis hospital where he remained unconscious and failed to react to any stimulus. There, he was pronounced brain dead and placed on a ventilator life support system. On September 12, 1984, at 11:12 a.m. he died.

An autopsy was conducted by Dr. Mary Case on September 13, 1984. She testified for the state that there was no visible external injury to the child's scalp. However, her examination indicated a very large subgaleal hemorrhage in the scalp as well as in the dura—a thick membrane separating bone underlying the brain. The head injury was the cause of death. The injury was the result of a significant blow or blows to the head. The autopsy revealed two other bodily injuries. Dr. Case determined there was hemorrhaging on the penis and this injury resulted from a trauma or a blow to the penis. She also discov-

ered the third, fourth, fifth and sixth ribs were fractured and these were apparently old injuries. There was a fresh fracture on the eleventh rib.

Defendant contends the use of autopsy photographs and the reaction of the maternal grandfather as a witness to a photograph depicting the child's condition the day before the discovery of death causing injuries served no other purpose than to influence and to prejudice the jury against defendant.

Defendant's first point contends that: [t]he court erred in receiving as evidence, over the objection of appellant, state's exhibits 8 through and including 19 and in permitting said exhibits to be exhibited to the jury for the reasons that said exhibits were gruesome color photographs of the body of the deceased taken during the course of an autopsy, that said exhibits were repetitious, that exhibits 9, 10, 11, 12, 13, 14, and 15 were irrelevant, that said exhibits 8 through 19 failed to shed any light on any issued [sic] in the case, that any probative value of any and all exhibits were greatly outweighed by the prejudicial value of the exhibits themselves and their subsequent use by the state, and that said exhibits inflamed the jury and prejudiced the jury against the appellant.

The trial court has broad discretion in the admission of photographs and we find no abuse of that discretion in this case. *State v. Guinan*, 665 S.W.2d 325, 331 (Mo. banc 1984). "Admitting the photographs in question was a discretionary act and erroneous only if the ruling resulted in fundamental prejudice and abuse of discretion. (citation omitted) Insofar as the photographs tend to be shocking or gruesome it is because the crime is of that sort." *State v. Clemons*, 643 S.W.2d 803, 805 (Mo. banc 1983). (citation omitted) As the state must sustain its burden, it should not be unduly limited as to the manner of satisfying this quantum of proof. *State v. Clemons*, 643 S.W.2d at 805. We review the ruling of the trial court by these standards

and not on the basis of a fixed rule. Each case involving this delicate issue invokes the more fundamental question as to whether or not the admission of these photographs served to displace the jury's rational thought process.

██ Photographs are admissible if probative of any material fact. *State v. Stokes*, 638 S.W.2d 715, 723 (Mo. banc 1982). Photographs may be admitted into evidence to show the nature or location of wounds or to corroborate or refute testimony. *Holtkamp v. State*, 588 S.W.2d 183, 190 (Mo.App.1979). A photograph should not be rejected simply because it tends to be inflammatory. *State v. Sherrill*, 657 S.W.2d 731, 737 (Mo.App.1983). The trial court has broad discretion to determine admissibility of demonstrative evidence. *State v. Stephens*, 672 S.W.2d 714, 718 (Mo.App.1984). *See also, State v. Curry*, 714 S.W.2d 798 (Mo.App.1986).

The photographs challenged in this appeal are sensitive and graphic. But to find error in their admission requires this court to find an abuse of discretion. *State v. Sherrill*, 657 S.W.2d at 737. The photographs taken of the deceased during the autopsy can be segregated into three groups. Exhibits 9–11, pertain to the bruise on the penis; exhibits 12–15, pertain to the broken ribs; and exhibits 16–19, pertain to the brain hemorrhage. Exhibit 8 is the autopsy identification picture.

At trial defendant's objection to the photographs was "that the identity of the deceased is not in issue, the cause of death is not in issue, nor the fact that the child abuse was involved … and the probative value of these particular photographs will be outweighed by the prejudice it will generate in the minds of the jurors against the defendant."

Defendant here contends as a part of his first point that all the photographs, exhibits 8–19, are repetitious and exhibits 9–15 [penis and ribs] are irrelevant. We will review the claim of error on the merits because the sense of the trial court objection was that the photographs were not probative of any disputed issue, were un-

necessary, and more prejudicial than probative. The overriding question is whether admission of all the autopsy photographs denied defendant his right to a fair trial in the sense that it prevented the jury from performing it's duty in deciding the only real issue, his criminal responsibility.

██ The key issue is whether or not the probative value of any of the photographs, individually or collectively outweigh the possibility of prejudice. Here, defendant was charged with second-degree murder, the elements of which are willfulness, premeditation, and malice aforethought. *State v. Mattingly*, 573 S.W.2d 372, 374 (Mo.App.1978). The charged element of willfulness requires a determination of whether defendant acted knowingly or intentionally to kill or cause serious bodily harm. Evidence of prior mistreatment of a child may be considered in establishing the intent required for second-degree murder. *Mattingly*, 573 S.W.2d at 374. This is true where the prior mistreatment was recent and the evidence is that defendant was responsible. *State v. Cook*, 557 S.W.2d 484, 487 (Mo.App.1977).

Defendant cites *State v. Robinson*, 328 S.W.2d 667 (Mo.1959) and *State v. Floyd*, 360 S.W.2d 630 (Mo.1962) for the proposition that a photograph must be excluded if it's prejudicial and inflammatory effect on the jury outweighs its probative value. *Mattingly*, 573 S.W.2d at 374. In *Floyd*, the photograph was found not to be probative of anything with the result that it was purely prejudicial. In *Robinson*, the photograph was obscene and offensive and added nothing to the case. *Mattingly*, 573 S.W.2d at 374. In the present case, the court acknowledged that the pictures were gruesome but found that the probative value outweighed the prejudice. Before admitting the photographs the court extensively questioned both parties as to what the photographs were to prove. The photographs were probative as to the recent and prior mistreatment of the child. This evidence was relevant on the issue of intent and the absence of accident when considered together with evidence on severity

of injuries. *State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304, 307 (1954); *State v. Letterman,* 603 S.W.2d 951, 954 (Mo.App.1980). The head injuries were so severe that they were immediately symptomatic and the symptoms occurred the day after the child was seen in apparent good health and after the child was in defendant's care for just over six hours. This evidence was particularly important because it was the defendant's contention that the injury which caused death could have occurred prior to this time frame but that the child merely became symptomatic while the child was in his care. Further, a medical witness for the state testified that defendant said the child "may have hit his head earlier in the day." Dr. Case testified that the head injuries she found during autopsy would cause the child to be "immediately unconscious or apneic [cessation of respiration] or very significantly neurologically impaired." Because of this testimony the photographs were probative on the contested issue of when the head injuries occurred and the absence of accident.

Defendant cites *State v. Mattingly,* for the proposition that the trial court in that case carefully exercised its discretion by excluding a photograph of a frontal view of the victim. Because of that exercise of discretion no error occurred. We find that in the present case that the trial court carefully exercised it's discretion as well but in different way. Although the trial court in this case admitted all the autopsy photographs it imposed a restriction on the state by not allowing any of the photographs to be passed to the jury. They could only be seen and demonstrated by Dr. Case during her testimony. The trial court stated to the prosecutor, "If I believe you are doing anymore than that, I'm going to stop you, so you let her make her point with the photographs and then move on."[1] The judge denied a request by the prosecutor to at least be allowed to approach the jury to show them at a distance. The jury did not request to see the exhibits during deliberations. The photographs may have been seen by the jury from a distance. However, the testimony of Dr. Case about the autopsy was graphic and gruesome in itself. The testimony was proper and not subject to objection.

After the present case was briefed and before oral arguments *State v. Mouser,* 714 S.W.2d 851 (Mo.App.1986) was decided. The court there found no abuse of discretion in admitting autopsy photographs of an exposed skull. The physician witness believed the photographs mandatory to understanding cause of death. The court relied on *State v. Clemons,* 643 S.W.2d 803, 805 (Mo. banc 1983).

In *Clemons,* the charges were first degree murder. The cause of death was burns attributed to defendant's arson. The approved photographic evidence showed burned bodies of victims. The rationale was that the photographs were accurate portrayals of a gruesome crime. However, the photographs depicted what was done by defendant and not what was done by another such as a doctor during an autopsy. In *Mouser,* seven autopsy slides were admitted over objection that they were "gruesome, cumulative, irrelevant and of little probative value." In two slides the skull was completely exposed. They depicted conditions based on the acts of the autopsy doctor. However, they were found necessary to prove that a gun was placed to the victim's head and a "contact" wound resulted. The autopsy pictures in the present case are not admissible on the rationale that the crime was gruesome nor that the pictures were necessary to prove causation and time of injury. The testimony of Dr. Case was sufficient for those purposes. She could have referred to the photographs during her direct and cross-examination just as she could have referred to notes made during the autopsy. There

---

1. The prosecutor in his attempt to persuade the trial court to allow the exhibits to be passed to the jury stated that he placed the photographs on the witness stand and seated himself in the second row of the jury box. From that location, he claimed no one would know what is in the photographs, and that he had a very difficult time in discerning what those photographs were showing even with his knowledge of their content.

is a difference between gruesome photographs of a gruesome crime and gruesome photographs of an autopsy after a crime which is not itself gruesome. We hold only that the record does not support a finding of prejudice as the photographs were handled in this case. Although admitted as exhibits the record does not confirm that they became prejudicial.

■ Under these circumstances we do not find an abuse of discretion even if one or more of the jurors was able to see some part of the photographs. Because of the superior vantage point occupied by the trial court for balancing the probative value and possible prejudice of demonstrative evidence we find it was within the trial court's discretion to admit the photographs into evidence. We do not decide that in future cases the procedure employed here to admit but not pass the photographs to the jury is required, necessary or preferred. We hold only that the procedure did not constitute an abuse of discretion in this case.

Defendant also contends the trial court erred in denying his request that the court declare a mistrial when the state showed the child's maternal grandfather a photograph depicting the victim sitting on his lap. The photograph was taken the day before the victim was symptomatic with the injuries that caused his death. The witness collapsed into tears before the jury. The photograph had been identified previously by a witness for the state. Defendant contends this served no other purpose than to inject a calculated prejudicial response into the minds of the jury.

"The declaration of a mistrial is a drastic remedy that should be employed only in those extraordinary circumstances in which prejudice to the defendant can be removed in no other way. (citation omitted). Whether a mistrial should be declared rests largely within the discretion of the trial court. (citation omitted). Because the trial court observes the incident that precipitates a request for a mistrial it is in a better position than is the appellant court to determine what prejudicial effect, if any, the incident has on the jury. (citations omitted). The trial court's decision whether to grant a mistrial will not be disturbed in the absence of an abuse of discretion." *State v. Davis*, 653 S.W.2d 167, 176 (Mo. banc 1983).

■ We find no abuse of discretion but share with the trial court it's expression of impatience for the incident. Here the trial court saw the witness collapse into tears. The jury was excused. Defendant moved for a mistrial. The court sought an explanation from the state as to why the photograph was shown to the witness. The prosecutor explained that he wanted to develop from the witness testimony that the victim had looked normal the day before his death which was the same day the picture was taken. He claimed the witness viewed the photograph prior to trial without adverse reaction and the witness had no objection to viewing the photograph at trial. Counsel further explained he had no intention to cause the witness to start crying or anything else. The trial court took the motion for mistrial under advisement. It was later denied. Before continuing with the trial, the trial court questioned the witness as to his fitness to continue testimony before bringing the jury back into the courtroom. After the recess the witness identified the picture with no reaction.

It is clear that the trial court seriously considered the motion for mistrial. It took measures to prevent any further reaction in the courtroom. We defer to an apparent and necessary finding that the event was not planned and was not a matter of intent or misconduct on the part of counsel. The photograph was of the witness and his deceased grandson on a happy occasion. It was tangible evidence of the child's condition the day before the injuries which caused death. The reaction of the witness was regrettable and understandable. In retrospect the adverse reaction could have been anticipated and avoided. The trial court observed that the witness was visibly emotional before the picture was presented. It found, however, that a mistrial was unnecessary and we defer to that ruling

primarily because the evidence itself, the photograph, was not incriminating or accusatory and the reaction was one the jury could understand whether defendant was criminally responsible for the death of the child or not. Further, the photograph tended to confirm the witness's observations of the child's condition of health at a critical time and the witness was subject to cross-examination when the event occurred. Finally, the explanation of the state was plausible and apparently believed by the trial court. The witness had been prepared for the event without any adverse reaction.

We affirm.

PUDLOWSKI, P.J., and CRANDALL, J., concur.