**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Andrew KINNARD,
Defendant-Appellant.**

**No. 46748.**

Missouri Court of Appeals,
Eastern District,
Division One.

April 24, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 1, 1984.

Application to Transfer Denied
July 17, 1984.

Claude Hanks, St. Louis, for defendant-appellant.

Kristie Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

STEPHAN, Judge.

This is an appeal from a conviction for capital murder, § 565.001, RSMo 1978. The defendant, Andrew Kinnard, was found guilty by a jury of murdering John Santino, and was sentenced in accordance with the verdict to life imprisonment without eligibility for probation or parole for fifty years. We reverse and remand because of error in the form in which Instruction No. 8 was submitted.

Defendant and Santino were neighbors on Jendale Court in Jennings, Missouri. On May 16, 1981, a police officer was called to the Santino home in response to a stray dog complaint. The dog was one befriended by defendant a few days before and was in Santino's yard at the time of the complaint. The officer left after discussing plans to turn the dog over to St. Louis County Rabies Control. Santino subsequently called the police after the dog reentered his yard. Defendant's wife informed defendant that Santino was choking the animal. Defendant thereafter took his shotgun from his house, fired one shot into the air, then a second shot into Santino's back. Santino later died from the wound.

At trial, defendant offered an instruction based on MAI–CR 2d 3.74, dealing with the defense of mental disease or defect as it applies to the jury's consideration of whether defendant committed the crime of murder in the second degree. The instruction, given by the court as Instruction No. 8, read as follows:

> Evidence that the defendant had or did not have a mental disease or defect may be considered by you in determining whether the defendant had or did not have the state of mind required of Murder in the Second Degree and set out in Instruction No. 7 as an element of that offense.

> If, after considering all of the evidence, including evidence that the defendant did or did not have a mental disease or defect, you find and believe from the evidence that the defendant engaged in the conduct submitted in Instruction No. 7, but have a reasonable doubt that he acted "with intent to take the life of John Santino", then you must find the defendant not guilty of the offense of Murder in the Second Degree as submitted in Instruction No. 7.

At the bottom of Instruction No. 8, as given to the jury for their use during their deliberations, was the stamp "Instruction No. 8 REFUSED."

■ Under any circumstances, sending the jury to its deliberations with an instruction marked "REFUSED" is irregular. Rule 28.02(f). Viewed in the whole context of this submission, it is obvious that this error created a very substantial likelihood for confusion in the minds of the jurors. They had been instructed on the elements of capital murder, MAI–CR 2d 15.02, properly modified to allow for the defense of mental defect or disease. This was followed by No. 6, a form of MAI–CR 2d 3.74 which set forth that defense as it relates to capital murder. The next instruction, No. 7, set forth the elements of murder in the second degree; and it was followed by No. 8 which was identical to No. 6, except for modification to relate it to second degree murder. It was this last instruction which bore the "REFUSED" stamp.

In accordance with MAI–CR 2d 2.01, the jurors had been told at the outset, "It is the Court's duty ... to instruct you upon the law applicable to the case. It is your duty to follow the law as the Court gives it to you." After the close of evidence, the jurors were instructed that "you must not single out certain instructions and disregard others or question the wisdom of any rule of law." MAI–CR 2d 2.03. Thus directed, they went to their deliberations with a mandate that the availability of the mental disease or defect defense had been "refused" by the trial court, certainly at least insofar as it related to murder in the second degree.

We are mindful of the general rule that an error in an instruction relating to a lesser degree of a crime will not be regarded as prejudicial where the defendant is convicted of a higher degree of the crime, unless the error prevents a conviction of the lesser crime. See *State v. McIlvoy*, 629 S.W.2d 333, 340 (Mo. banc 1982). Had the error here been of the usual variety, e.g. an internal variation from the approved instruction form, that general rule would be applicable here because of the conviction of the greater offense. In this case, however, having been told not to "single out" any particular instruction nor to "question the wisdom" of any rule imparted by the judge, the jurors were effectively told that Instruction No. 8 was not the law. Should they then be presumed to have determined that, although the instruction was not the law as to murder in the second degree, it was the law as to capital murder? Or, is it more likely that the directive that the instructions be read as a whole caused them to apply the "REFUSED" caption not only to Instruction No. 8, but also to the almost identically worded parallel Instruction No. 6? Any attempt to answer these questions is necessarily predicated upon judicial speculation and shrouded in substantial doubt. Substantial doubt as to whether the error was prejudicial to defendant's right to have the jury correctly instructed must be resolved in defendant's favor. That is to say, if a reviewing court is unable to conclude with reasonable certainty that the defendant was accorded a fair trial, he is entitled to a new trial.

Although the parties point us to no case, and our research has revealed none, in which an irregularity of this nature occurred, we are provided guidance by general statements such as that found in *State v. Winn*, 324 S.W.2d 637, 642 (Mo.1959): "[S]o long as we adhere to the practice of giving written instructions, which the jury may take and study, it is essential that each and every instruction be at least substantially correct, certainly to the extent that it is not affirmatively misleading, and that no two or more instructions shall be conflicting in a material sense." The "REFUSED" imprint on Instruction No. 8 was in direct conflict with the "GIVEN" inscription on No. 6, its counterpart in the capital murder submission, and a "carryover" effect would amount to positive misdirection.

The state argues that defendant was not entitled to an instruction on the negative defense of mental disease or defect, under any circumstances, because the evidence failed to support it. We disagree.

Although defendant's psychiatrist, Dr. Raymond Knowles, stated the conclusion that defendant "is without mental disease or defect," the issue was not thereby foreclosed. Other evidence from the same witness raised questions as to whether defendant possessed the state of mind required for capital murder or murder in the second degree. As a result of his examination of defendant, Dr. Knowles found defendant's reasoning ability to be impaired, that he lacked the emotional stability to deal with the victim without resorting to the primitive response of violence when the victim mistreated the stray dog. Dr. Knowles also testified that, as the defendant perceived the situation, defendant "was being provoked beyond endurance." Such evidence raised the issue of whether the defendant had a mental disease or defect, i.e. a "mental abnormality, regardless of its medical label," according to the definition

in MAI–CR 2d 2.32.[1]  He was, therefore, entitled to have the jury instructed accordingly.

Reversed and remanded for new trial.

SIMON, P.J., and KAROHL, J., concur.

---

**1.**  We note, without detailing here, that defendant's testimony such as that concerning his reasons for shooting the victim bordered on the bizarre.  This, of course, came within "all of the facts, circumstances and opinions given in evidence" which the jury was told in the terms of MAI–CR 2d 2.32 to consider in determining whether defendant suffered from a mental disease or defect.  See also *State v. Moon,* 602 S.W.2d 828, 835 (Mo.App.1980).