STATE of Missouri, Respondent,

v.

Michael Wayne GILL, Appellant.

No. WD 43257.

Missouri Court of Appeals,
Western District.

Feb. 5, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 2, 1991.

Raymond L. Legg, Columbia, for appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty., Jefferson City, for respondent.

Before GAITAN, P.J., and TURNAGE and KENNEDY, JJ.

GAITAN, Presiding Judge.

Appellant, Michael Wayne Gill, appeals his conviction for sexual abuse in the first degree, Mo.Rev.Stat. § 566.100 (1986), for which he received a four year sentence. He alleges the trial court erred by: (1) refusing to give an instruction on diminished mental capacity; (2) permitting evidence of a statement made by appellant in violation of his *Miranda* rights; and (3) admitting hearsay evidence. We affirm.

Appellant's sister, Bobby Gill, babysat J.H., who was four years old on August 29, 1988. When J.H.'s mother, Robin, picked J.H. up on the night of August 30, she discovered a problem with J.H. and took her to the police station and then to the hospital.

The police went to appellant's residence stating that they wanted to talk to him about J.H. at 9:00 a.m. on August 31. Appellant was taken to the conference room library at the police station and given his *Miranda* warning. Jefferson City Police Officer Kathy Carew, who had known appellant and his family, was aware of appellant's limited intellectual abilities and took extra precautions to make sure that he understood his *Miranda* rights. Appellant signed a waiver of rights form.

At some point, Police Officer Terry Benson came into the room while Carew was interrogating appellant. When appellant stated that maybe he needed to talk to someone, Benson picked up the rights form, showed the form to appellant and told him that it was his right to talk to someone including an attorney. Benson then went over each right again using the form. Benson was also aware that appellant had limited intellectual abilities and Benson also took extra precautions in dealing with appellant to make sure that he understood all of his rights.

Appellant initially admitted that he had seen J.H. while his sister was babysitting her, but denied touching her improperly. Upon re-examination by Officer Carew, appellant changed his story. Appellant stated that he had gone downstairs to where J.H. was sleeping in a lower bedroom of the residence. He stated that he removed her shirt and pants, and that he had inserted his middle finger into her front and back private areas. When asked if he was sexually aroused when playing with J.H., appellant stated that he had had a partial erection. However, appellant stated that he did not take his penis out of his pants. According to appellant, his sister and mother were upstairs while he engaged in this conduct with the victim.

Carew spoke to J.H. out of her mother's presence at approximately 1:15 p.m. on August 31. J.H. told Officer Carew that appellant removed her shirt and pants. J.H. then said that appellant touched her in her private parts. Specifically, J.H. said that

**50**

appellant had touched her where she went "poop" and that it had hurt. When asked what appellant had said to her, J.H. responded that Mike told her not to tell anyone and to quit crying.

Appellant did not testify but offered the testimony of William Robert Holcomb, the superintendent at Fulton State Hospital, as well as a Ph.D. in clinical psychology, and psychiatrist Charlotte Balcer, who had examined appellant to determine whether or not he had a mental disease or defect. Holcomb testified that while appellant did not suffer from a mental disease or defect, appellant's intellectual functioning was below average. While Holcomb testified that appellant had "diminished capacity", Holcomb testified that "this diminished capacity" which he diagnosed was not a mental disease or defect as defined by law. Balcer also testified that appellant did not suffer from a mental disease or defect but testified that appellant had "diminished capacity" because he had a difficult time controlling his impulses since he had been abused as a child and had improper role models.

I.

■ The term "mental disease or defect" is defined in Mo.Rev.Stat. § 552.010 (1986). Under the doctrine of diminished mental capacity, the defendant remains fully responsible for his conduct but can be found guilty of only those offenses, if any, of which he is mentally capable. *State v. Shaw,* 636 S.W.2d 667, 673 (Mo. banc), *cert. denied,* 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982) (citing *State v. Anderson,* 515 S.W.2d 534 (Mo. banc 1974)); *State v. Foerstel,* 674 S.W.2d 583, 592 (Mo.App.1984). Diminished mental capacity is a special negative defense. *Shaw,* 636 S.W.2d at 673.

■ Missouri cases make it clear that a claim of diminished capacity must rest upon substantial evidence of a mental disease or defect as defined in Mo.Rev.Stat. § 552.010 (1986). *See State v. Fisher,* 773 S.W.2d 178, 181 (Mo.App.1989); *State v. Weatherspoon,* 716 S.W.2d 379, 384 (Mo. App.1986), *cert. denied,* 479 U.S. 1095, 107 S.Ct. 1313, 94 L.Ed.2d 167 (1987). Further,

the Notes on Use accompanying the diminished capacity instruction submitted by the appellant state that the instruction should only be given "if supported by evidence of mental disease or defect relevant to the existence of a required culpable mental state." MAI–Cr3d 308.03 (1987).

■ Both experts in this case testified that appellant did not suffer a mental disease or defect. Instead, both experts testified that appellant's IQ of 80 indicated that appellant's intellectual functioning was below average. Both experts testified that because appellant was sexually abused as a child, appellant was unable to socially judge what normally would be considered right or wrong. According to both experts, while appellant could understand the difference between right and wrong, he had not observed role models behaving correctly and, therefore, appellant's judgment was lessened. According to Dr. Balcer, while appellant might know that behavior is wrong, it would be hard for him to believe that it was wrong because he had been a victim. While Dr. Holcomb testified that appellant suffered from diminished capacity, he admitted that the diminished capacity he diagnosed did not result from a mental disease or defect as defined by law. Balcer concurred with Holcomb on this subject.

The evidence presented at trial fell short of being substantial evidence of a mental disease or defect validating submission of an instruction concerning diminished capacity. *See State v. Shaw,* 636 S.W.2d at 673. Therefore, the trial court did not err in refusing to submit the tendered instruction placing the issue of diminished capacity before the jury.

Relying on *State v. Kinnard,* 671 S.W.2d 336 (Mo.App.1984), appellant attempts to argue that the experts' testimony that appellant did not suffer from a mental disease or defect did not foreclose the issue of diminished capacity. In other words, that it is proper to instruct the jury on diminished capacity even if there is no substantial evidence of mental disease or defect. This argument is counter to both *Fisher* and *Weatherspoon,* the Notes on Use following

the tendered instruction, and the language of *Kinnard.*

In *Kinnard,* while the defendant's psychiatrist testified that the defendant was without mental disease or defect, the same witness raised questions as to whether the defendant possessed the state of mind for capital murder or murder in the second degree. *Id.* at 338. "Such evidence raised the issue of whether the defendant had a mental disease or defect...." *Id.* Thus, the court in *Kinnard* did not, as appellant contends, remove the requirement of substantial evidence of a mental disease or defect to support a claim of diminished capacity. Indeed, the court looked for, and found, such evidence in the expert's testimony. Further, *Kinnard* is factually distinguishable from this case. There is no showing of a lack of emotional stability or any impairment of appellant's reasoning ability. *Id.* He knew his conduct was not right. That is why he tried to hide it. Accordingly, contrary to appellant's argument, *Kinnard* is not persuasive authority in this case.

In this case, there was no substantial evidence that appellant suffered from a mental disease or defect, as defined in Mo. Rev.Stat. § 552.010 (1986), "negating a culpable mental state." Notes on Use, MAI–Cr3d 308.03 (1987). Accordingly, the court properly denied appellant's proffered instruction A.

## II.

■ Appellant next asserts that the trial court erred in admitting evidence of his statements to members of the Jefferson City Police Department because appellant states that he made an equivocal request for counsel by saying "maybe I should talk to someone." Initially, it should be noted that appellant's claim is not preserved for appellate review because appellant failed to object to the admission of the statements when the evidence was introduced at trial.

*State v. Rayford,* 611 S.W.2d 377, 378 (Mo. App.1981). However, we shall examine this issue *ex gratia.*

■ The state bears the burden of proving the voluntariness of a confession by a preponderance of the evidence. *State v. Lytle,* 715 S.W.2d 910, 915 (Mo. banc 1986). On appeal, this Court must determine whether the evidence was sufficient to sustain the trial court's finding that the statement was voluntarily given. *Id.* Conflicts in the evidence are for the trial court to resolve and this Court must defer to the trial court's ability to determine credibility. *Id.*

■ The Fifth Amendment prohibition against compelled self-incrimination provides an accused with the right to have counsel present during custodial interrogations. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[1] An accused person in custody who has expressed his desire to deal with the police only through counsel is not subject to further interrogation by authorities until counsel has been made available to him, unless the accused himself initiates further communications, exchanges or conversations with the police. *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981).

■ In *State v. Reese,* 795 S.W.2d 69, 73 (Mo. banc 1990), the Missouri Supreme Court held that the mere mention of counsel is not enough. There must be a specific request for counsel.

■ In the instant case, there was no violation of the *Edwards* rule because appellant at most made an ambiguous statement which did not constitute a clear assertion of his right to counsel. The record shows that the police had contacted appellant at his home at 9:00 a.m. on August 31, 1988. The police officer told appellant that she wanted to talk about J.H. When they

---

1. Although appellant in his point relied on argues that the submission of his statement also violated his Sixth Amendment right, the statement was taken only hours after the crime was reported and there is no indication in the record that any Sixth Amendment right to counsel attached because adversarial judicial proceedings had been initiated. *See Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986); *State v. Beck,* 687 S.W.2d 155, 156 (Mo. banc 1985).

arrived at the police station, Police Officer Carew read appellant his *Miranda* rights and he signed a waiver. Officer Carew was aware of appellant's limited intellectual capacities and took extra precautions to be sure that appellant understood his rights.

Detective Benson also entered the room during the interview. Appellant started talking and then stated that "maybe I should talk to someone." When Officer Benson asked appellant if he wanted an attorney, appellant replied no. When asked what he meant by "someone", appellant stated that he did not know for sure who to talk to or really what to do. Officer Benson then reviewed the *Miranda* rights form with appellant making sure that he understood each right. He told appellant that they had a phone and a telephone book in the library on the desk where appellant was. Appellant again waived his *Miranda* warnings and then made statements to the police.

The statement by appellant that "maybe I should talk to someone" was ambiguous and did not constitute an assertion of his right to counsel under *Edwards.* In fact, when appellant was specifically asked whether he was requesting an attorney, appellant stated that he was not.

In *State v. Moore,* 744 S.W.2d 479 (Mo. App.1988), the court found that a defendant's reflective and equivocal comment that "maybe" he needed an attorney was not equivalent to a request to cut off questioning. *Id.* at 481. Here, appellant's case was even more equivocal because he did not expressly refer to maybe speaking to an attorney, but instead only indicated that "maybe" he should talk to "someone." *See also State v. Reese,* 795 S.W.2d at 72–73.

 Appellant also argues that the police failed to comply with § 600.048 requiring the posting of the accused's rights to counsel. While appellant notes that Benson told appellant that if he needed to talk to an attorney there was a telephone and directory available, appellant argues that there is not sufficient evidence that Benson actually made the telephone and directory available to appellant. Because this issue is being raised for the first time on appeal, the issue was not sufficiently preserved. *State v. Rayford,* 611 S.W.2d 377, 378 (Mo. App.1981).

The trial court considered the admissibility of the confession and found that it was voluntary. There is absolutely no indication in the record that appellant made a clear assertion of his right to counsel and, in fact, appellant unequivocally stated that he was not requesting assistance of an attorney. Accordingly, the court properly denied appellant's motion to suppress and admitted the confession at trial.

### III.

In his final point on appeal, appellant argues that the trial court abused its discretion in admitting an out-of-court statement made by the victim pursuant to Mo. Rev.Stat. § 491.075.1 (1986), because appellant argues that the child's statement to Officer Kathy Carew failed to include "particularized guarantees of trustworthiness" required for its admission.

 Here, the court held a hearing pursuant to § 491.075.1 concerning the admissibility of a statement made by the four-year-old victim to Police Officer Kathy Carew. Carew, a police officer with the Jefferson City Police Department, testified that appellant's sister (the victim's babysitter), and the victim's family reported a case of sexual abuse. Originally, Carew spoke to appellant's sister on August 30, who told the officer that when she tried to put the victim to bed at the usual time, the victim was crying and would not go to sleep. When appellant's sister pursued why the victim would not go to sleep, the victim told her that Mike had touched her. Appellant's sister and mother decided to wait until the victim's mother got off work to tell her about this. After the victim's mother and babysitter reported this to the police, they took the victim to St. Mary's Hospital.

Carew testified that when she interviewed the victim on August 31, 1988, in a library in the police station, the victim told her that the night before, Mike, her moth-

er's friend, had touched her between the legs where she went "poop" with his hand and that it hurt. J.H. also told the officer that appellant had removed her shirt and pants. The victim also told the officer that appellant told her to be quiet and not cry and indicated that appellant called it a "time out."

The officer talked to J.H. for a very short time, making no promises or inducements to J.H. The victim's mother was not present in the interviewing room while the victim made the statement to the police. According to Officer Carew, she did not push the little girl to make statements. Prior to trial, the court also brought the child into appellant's presence and determined that she was an unavailable witness.

In *Idaho v. Wright*, — U.S. —, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), the United States Supreme Court addressed the question of whether the admission at trial of certain hearsay statements made by a child to an examining pediatrician violated the defendant's rights under the confrontation clause of the United States Constitution. In that case, the child was unavailable. Relying largely on *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Court held that the admission of the out-of-court statement of the child would not violate the confrontation clause if there are "particularized guarantees of trustworthiness" drawn from the totality of circumstances that surround the making of the statement and that render the declarant particularly worthy of belief. *Wright*, 110 S.Ct. at 3149. According to the court, "unless an affirmative reason, arising from the circumstances in which this statement was made, provides the basis for rebutting the presumption that a hearsay statement is not worthy of reliance at trial, the confrontation clause requires exclusion of the out-of-court statement." *Id.* at 3150.

The court cited examples of factors which could be considered in determining whether the statement was reliable such as spontaneity and consistent repetition, the mental state of the declarant, the use of terminology unexpected of a child of similar age, and the lack of motive to fabricate. *Id.* However, the court noted that these factors were not exclusive and that courts have an appropriate leeway in their consideration of appropriate factors. According to the court:

> We therefore decline to endorse the mechanical test for determining "particularized guarantees of trustworthiness" under the Clause. Rather, the unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made.

*Id.* The court, however, held that corroborating evidence may not be used in order to support a finding of particularized guarantees of trustworthiness. *Id.* at 3150–52.

Section 491.075 provides for even more particularized guarantees of trustworthiness to be present when the child is unavailable. *See State v. Wright*, 751 S.W.2d 48, 51–52 (Mo. banc 1988) (relying on the reasoning of *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)); *State v. Bereuter*, 755 S.W.2d 351, 353 (Mo.App.1988). Specifically, the interview of the child was not lengthy and Officer Carew clearly stated that she did not ask leading questions of the victim. *See Wright*, 751 S.W.2d at 52.

In addition, the victim's mother was not present when the victim made the statement to the police officer indicating that there was no direct pressure on the victim when she made the statement. *Id.* Appellant attempts to argue that the victim's mother had a motive for telling the victim to lie because she had broken off her relationship with appellant. In fact, the victim's mother testified that while appellant wanted to get back together, she chose not to. There is absolutely no proof in the evidence that there was a connection between the break-up in this case and the victim's allegations of sexual abuse. Any argument that there was some sort of motive by the victim's mother to force the victim to fabricate this allegation is merely speculative and not supported by the evidence.

Moreover, the statement of the victim to appellant's sister was consistent with the statements made to the police by stating that appellant had touched her. *See State v. Potter*, 747 S.W.2d 300, 304–05 (Mo.App. 1988); *State v. Bereuter*, 755 S.W.2d 351, 353 (Mo.App.1988).

The time between the occurrence of the offense and the victim's statement to police was not unusually long. *See State v. Potter*, 747 S.W.2d 300, 304–05 (Mo.App.1988). There were no intervening circumstances between the actual offense and the child's statement because the child was taken directly to the police station and then the hospital. While appellant argues that the victim had not slept between the time of the offense and her statement to police, the record is not clear that the victim had not slept at all and there was no indication from the record that the victim was too tired to make a statement.

For the aforesaid reasons, the judgment of the trial court is affirmed.

All concur.