STATE of Missouri, Respondent,

v.

Anthony DAVIS, Appellant.

Anthony DAVIS, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 58338, 60074.

Missouri Court of Appeals,
Eastern District,
Division One.

July 14, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Aug. 12, 1992.

Application to Transfer Denied
Sept. 22, 1992.

Dave Hemingway, St. Louis, for appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Anthony Davis, appeals from his jury trial conviction in the Circuit Court of the City of St. Louis of one count of

illegal possession of phencyclidine (PCP), RSMo § 195.020 (1986), for which he was sentenced to five years' imprisonment. Appellant also appeals the dismissal of his untimely Rule 29.15 motion. We affirm.

Appellant does not challenge the sufficiency of the evidence and we see no reason to extend this opinion with a detailed recitation of the facts. It is sufficient to note that, on November 30, 1988, Officers Mark Franklin and Jorden Lewis of the St. Louis City Police Department observed appellant discarding two items when approached by the officers' marked patrol car. The items were found to be a package of More cigarettes, apparently a favorite of PCP users, and a small bottle containing PCP.

On January 12, 1989, appellant was charged by information with illegal possession of PCP, RSMo § 195.020.1(2) (1986) (repealed effective August 28, 1989). On January 9, 1990, the State filed an amended information alleging appellant was a prior offender. The case proceeded to trial that same day and, on January 12, 1990, the jury returned its guilty verdict. On April 10, 1990, appellant was sentenced to five years' imprisonment.

On April 20, 1990, appellant filed an appeal of his conviction with this court. The transcript of the proceedings was filed on November 30, 1990. On January 25, 1991, appellant filed his *pro se* motion pursuant to Rule 29.15 requesting relief from his conviction and sentence. Because this motion was filed well outside the time limits prescribed by Rule 29.15(b), the trial court dismissed appellant's *pro se* motion on March 19, 1991. This appeal followed.

On February 4, 1992, this court handed down its opinion affirming appellant's conviction and affirming the motion court's dismissal of appellant's Rule 29.15 motion. On March 16, 1992, appellant filed an application for transfer to the Missouri Supreme Court. On April 23, 1992, the Missouri Supreme Court granted transfer of the case, and then retransferred the case to this court "for reconsideration in light of *State v. Kempker*, 824 S.W.2d 909 (Banc 1992)."

Appellant's sole claim on appeal of his conviction is that the trial court erred in denying his motion to quash the venire panel due to the State's discriminatory use of its peremptory strikes in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We disagree.

The record reveals that the original venire panel consisted of thirty-five people. Twenty-two of these people were white, thirteen black. After strikes for cause, eighteen whites and ten blacks were left on the panel. The State used five of its allotted six peremptory strikes to remove black venirepersons and the resulting jury consisted of nine white jurors and three black jurors.

Appellant then objected to the composition of the jury, contending that the State had exercised its peremptory challenges in violation of *Batson v. Kentucky*. The trial court asked for reasons for the State's strikes, heard rebuttal from appellant's counsel and denied the *Batson* motion.

The court then noted that certain cases from this court had held that three black venirepersons on the final jury was enough, in itself, to overrule a *Batson* motion because defendant was thereby protected from an equal protection violation. *See State v. Crump*, 747 S.W.2d 193 (Mo. App., E.D.1988); *State v. West*, 766 S.W.2d 103 (Mo.App., E.D.1989). Apparently believing that three blacks on the jury was not enough, the court asked the State to replace one of the whites on the final jury panel with a black juror that had been previously removed. The court explained that it wished this to be done "so that the protection that is sometimes talked about in these opinions may be there." The State agreed to make the switch and appellant, although still maintaining his *Batson* objection was valid, also agreed. The final jury after the switch consisted of four blacks and eight whites.

On appeal, appellant does not challenge the "switch" performed by the trial court outside of his claim that it did not cure the *Batson* violation he contends occurred. Instead, appellant focuses his attack on the strikes made by the State alleging that

they were made with a discriminatory purpose.

■ The trial court's decision on the ultimate question of discriminatory intent represents a finding of fact and is entitled to great deference on appeal. *Hernandez v. New York*, — U.S. —, 111 S.Ct. 1859, 1868, 114 L.Ed.2d 395 (1991). "In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge will be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province." *Hernandez*, 111 S.Ct. at 1869. Although it is not sufficient to argue that affirmance must follow solely because the trial court considered the prosecutor credible, *State v. Kempker*, 824 S.W.2d at 911, this court believes the trial court's ability to assess the credibility of the prosecutor plays a major role in determining the validity of a *Batson* challenge. To hold, as appellant urges, that this court should base its decision on nothing more than the cold printed word of the transcript is to ignore not only United States Supreme Court precedent, *see Hernandez*, 111 S.Ct. at 1868, but also reality. A party's demeanor, more often than not, says far more than their words. This court will decline to overturn the circuit court's findings on the issue of discriminatory intent unless firmly convinced that the court's determination was clearly erroneous. *State v. Kilgore*, 771 S.W.2d 57, 62 (Mo. banc 1989).

■ On appeal, appellant has challenged all five strikes made by the State against black venirepersons. We note, however, that appellant's attorney at trial only argued that three of the State's strikes were for pretextual reasons. Where a trial counsel fails to challenge a strike as pretextual, this court is left with little in way of a record to review the State's reasons for the strikes. Instead, we must assume that no challenge was made to the State's reasons because trial counsel was satisfied the strike had not been made with the intent to discriminate. Where counsel for appellant is satisfied with the reason given, this court is hardly in the position to find the trial court erred. *State v. Jackson*, 809 S.W.2d 77, 81 (Mo.App., E.D.1991).

■ As to the other three strikes, we first note the State struck Venireperson Austin because he laughed and rolled his eyes during voir dire. The court admitted it had observed this behavior. On appeal, appellant directs us to another venireperson that had laughed but was not struck. While the failure to strike similarly situated jurors may constitute some evidence of discriminatory intent, *State v. Brown*, 747 S.W.2d 261, 262 (Mo.App., E.D.1988), it is not conclusive evidence, in itself, that discrimination occurred. Instead, we believe that the disparate treatment of similarly situated jurors should be regarded as a single factor for the trial court to consider in making its determination in addition to other surrounding circumstances and the credibility of the State's attorney. Where, as here, the evidence allows two permissible views of the circumstances involved in a strike, the fact finder's choice between them cannot be clearly erroneous. *Hernandez*, 111 S.Ct. at 1871–72. The court in the present case was able to observe the behavior of both venirepersons and determine whether the behavior was truly similar. The court obviously decided it was not and believed the reason given by the State's attorney for striking Venireperson Austin was the real reason, and that race did not play a roll in the State's decision.

■ The same rationale applies to the State's strike involving Venireperson Jones. Venireperson Jones was struck because she was a day care worker and the State thought she was more receptive to appellant's questions. The State's attorney explained that she believed day care workers tended to be "a little more sympathetic." Appellant points out that Venireperson Prag was a high school counselor and, thus, fell into a category of those that could be deemed to be more "sympathetic." Again we note that the key in a *Batson*

case is the motivation behind the State's strikes. Any reason for the strike is valid so long as it is not racially based. Here, the State felt Venireperson Jones was more receptive to the appellant's questions. In addition, the State believed Venireperson Jones to be in a profession that, from past experience, she had found to be more sympathetic to defendants. Finally, the State indicated Venireperson Prag was entitled to disparate treatment because he had "two friends who are police officers and he was on a criminal jury that returned a verdict." The trial court discussed this similarity between Venirepersons Prag and Jones with appellant's counsel and the State's attorney at great length. It had an excellent opportunity to observe the State's demeanor and examine the reasons offered for Venireperson Jones' exclusion from the jury.

This court's function is not to perform an independent review of a trial court's rejection of a *Batson* claim. Instead, we review the trial court's decision with great deference to its findings. In the present case, the trial court had ample evidence to support the reasons given by the State for removing Venireperson Jones. While Venireperson Prag shared some of Venireperson Jones' attributes, the trial court was in the best position to determine whether the disparate treatment was a result of impermissible racial prejudice or permissible trial tactics. We cannot find that the trial court's decision here was clearly erroneous.

■ The State's final strike involved Venireperson Hamilton. The State struck Venireperson Hamilton because she seemed "indifferent" to the proceedings and did not answer any questions during voir dire. We note that Venireperson Hamilton was voir dired with six other jurors separately from the main panel when it appeared there were an insufficient number of jurors to choose from after strikes for cause were made. The questioning of those jurors was rather perfunctory and three jurors, other than Venireperson Hamilton, answered no questions other than when they were directly asked. As we have noted in the past, this court regards

strikes for "indifference" or "inattentiveness" with suspicion. *State v. Metts*, 829 S.W.2d 585, 587 (Mo.App., E.D.1992). Such a "reason" requires a subjective judgment on the part of the State's attorney that is "particularly susceptible to the kind of abuse prohibited by *Batson*." *U.S. v. Sherrills*, 929 F.2d 393, 395 (8th Cir.1991). Based on the record before us, this court does not find sufficient evidence to support the State's use of a peremptory challenge on Venireperson Hamilton.

■ This does not mandate reversal in the present case, however. As noted above, the trial court asked the State to switch one of the removed black venirepersons with a retained white venireperson. Venireperson Hamilton, as a result, served on the jury in this case. The ordered switch had the result of disallowing the strike of Venireperson Hamilton and thereby cured the violation of her right to sit on the jury. While appellant had requested a quashing of the jury panel due to the perceived *Batson* violation, this court does not believe the quashing of the entire jury panel is mandated by *Batson*. Where a *Batson* violation can be cured by the mere disallowing of the violative strike, the trial court, in the exercise of its discretion, should be permitted to so cure the violation. The appellant, therefore, suffered no prejudice from the disallowed strike of Venireperson Hamilton.

Appellant next contends that the trial court erred in dismissing his untimely Rule 29.15 motion. The constitutionality of the time limitations provided in Rule 29.15 has been considered on innumerable occasions. We see no reason to add to the vast number of cases discussing this issue and, therefore, affirm this point pursuant to Rule 84.16(b).

The decision of the trial court is affirmed.

REINHARD, P.J., and CRANE, J., concur.