**STATE of Missouri, Respondent,**

v.

**Clarence OTTWELL, Appellant.**

**Clarence OTTWELL, Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 59585, 62328 and 62294.**

Missouri Court of Appeals,
Eastern District,
Division Two.

April 13, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 12, 1993.

S. Paige Canfield, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

CRANDALL, Presiding Judge.

Defendant, Clarence Jackson Ottwell, appeals from the judgment of conviction of murder in the first degree for which he was sentenced to a term of imprisonment for life without possibility of probation or parole. We affirm.

Defendant does not challenge the sufficiency of the evidence. Viewed in the light most favorable to the verdict, the evidence established that on December 24, 1985, defendant was released from jail on bond, where he had been incarcerated on assault charges. The charges arose as the result of defendant's attack on his paramour on November 16, 1985, after an altercation in which he accused her of having an affair with their landlord. While in prison, defendant wrote her letters. He assumed they were going to be married, as they had planned prior to his incarceration.

After his release, defendant returned to the rental house which he had shared previously with his paramour. He planned on having Christmas dinner with her and began preparations. The paramour, however, had moved out of the house after defendant attacked her. The landlord informed defendant that she was "fooling around" and that she was "a liar and a tramp." Defendant admitted to being a very jealous person.

Throughout the day, defendant drank about six beers in addition to whiskey. Shortly after midnight on December 25, he took the landlord's truck and drove to the victim's house where his paramour was staying. Prior to living with defendant, she had been involved with the victim.

Upon arriving at the house, defendant shot at the front door and entered the house. Defendant shot the victim as he was calling the police for help. The victim died as a result of a gunshot wound to his chest. Defendant then dragged his paramour out of the house, forced her into the truck, and drove away with her. Shortly thereafter, he released her.

Defendant testified at trial. He stated that he was intoxicated and that he did not remember shooting the victim or any of the events that occurred early that Christmas morning. He claimed to be an alcoholic who suffered from blackouts due to his intoxication.

The jury found defendant guilty of murder in the first degree. The court sentenced him to life imprisonment without possibility of probation or parole. Defen-

dant later filed a Rule 29.15 motion, which the court denied without an evidentiary hearing.

Defendant's first point is two-pronged. First, defendant contends that the trial court erred in excluding expert testimony that, when the murder was committed, defendant was suffering from an alcoholic blackout. Next, defendant alleges error in the trial court's giving MAI–CR3d 310.50. Defendant argues that both actions of the trial court had the effect of denying him due process.

■ We first address the trial court's refusal of the expert testimony regarding defendant's intoxication. Defendant posits that he was entitled to show that he suffered from an alcoholic blackout to negate the requisite mental state for murder in the first degree; namely, "deliberation." *See* § 565.020.1, RSMo (Cum.Supp.1992). He claims that evidence of his intoxication would not furnish him with a complete defense, but would entitle him to an involuntary manslaughter submission.

The Supreme Court of Missouri recently decided a similar issue in *State v. Erwin*, 848 S.W.2d 476 (Mo. banc 1993). In that case, the defendant was convicted of second degree murder for shooting his friend in the head, as the friend slept. The defendant sought to interject intoxication as a defense. The Supreme Court upheld the trial court's rejection of expert testimony that defendant's alcoholic blackout made it impossible for him to act "knowingly," the requisite intent for second degree murder. *See* § 565.021.1(1), RSMo (1986).

In *Erwin*, one of the grounds which the court advanced for the exclusion of the expert testimony was that the expert's opinion was not offered as a diagnosis of a mental disease or defect establishing that the defendant was incapable of having a specific mental state. *Erwin*, 848 S.W.2d at 480; *see also* § 552.010, RSMo (1986). As such, the expert's opinion was merely a conclusion which could be drawn by a juror. *Id.* at 480–481. The court stated that "the jury alone, under proper instructions, ... is responsible for determining whether the defendant had the requisite mental

state." *Id.* at 481. The court therefore upheld the exclusion of the expert's opinion as to the defendant's mental state because it was superfluous. *Id.* (citing 7 Wigmore, *Evidence*, §§ 1917, 1918) (Chadbourn rev. 1978)).

In the instant action, defendant made an offer of proof. His expert testified that defendant's level of intoxication rendered him incapable of forming the intent associated with deliberation. Yet, the expert stated that defendant did not suffer from a mental disease or defect which would relieve him of responsibility for his conduct. The expert's opinion was identical to the opinion rejected in *Erwin* and was tantamount to a conclusion which could be drawn by a juror. The trial court properly excluded expert testimony about defendant's alcoholic blackout. In view of our holding that the testimony was inadmissable, we need not reach the due process issue. *See Erwin*, at 481.

■ We next turn to the instruction MAI–CR3d 310.50. That instruction provided: "You are instructed that an intoxicated condition from alcohol will not relieve a person of responsibility for his conduct." In *Erwin*, 848 S.W.2d at 483–484 the Missouri Supreme Court decided that, because MAI–CR3d 310.50 implicitly relieved the State of proving an element of an offense as established by statute, the instruction was improper. The court in *Erwin*, however, restricted the application of its holding to cases tried in the future and to cases subject to direct appeal at the time the opinion was issued, provided "the issue is preserved that MAI–CR3d 310.50 violated due process because it relieved the state of its burden of proof as to the requisite mental state." *Id.* at 484.

In the instant action, defendant's challenge to the MAI–CR3d 310.50 was raised for the first time on appeal. He did not raise the issue either at trial or in his motion for new trial, thus, he failed to preserve the issue for our review. The holding in *Erwin* therefore is not applicable to defendant's appeal. Defendant's first point is denied.

In his second point, defendant alleges that the trial court erred in admitting testimony about the physical abuse of his paramour which occurred on November 16, 1985. He argues that such evidence was inadmissible as evidence of another crime, and because it created in the minds of the jurors the idea that he had a general propensity to violence.

■ Evidence of uncharged crimes committed by a defendant is usually inadmissible unless that evidence is logically relevant to establish the defendant's guilt of the crime charged. *State v. Henderson*, 826 S.W.2d 371, 374 (Mo.App.1992). Here, defendant's assault of his paramour established that he was extremely jealous of, and reacted with violence towards, the suggestion of his paramour's infidelity. His attack on his paramour also was the catalyst for her decision to move from their residence, which, in turn, motivated the violent attack on the victim.

■ Evidence of the prior assault was crucial in establishing defendant's motive for the offense and was therefore admissible. Generally, wide latitude is allowed in the development of evidence of motive. *State v. Smith*, 772 S.W.2d 760, 764 (Mo. App.1989). The trial court did not abuse its discretion in admitting the evidence.

■ Defendant also challenges the display of photographs depicting the injuries his paramour sustained as a result of the assault. The photographs were shown to witnesses at trial. The photos, however, were neither admitted into evidence nor shown to the jury until the penalty phase of the trial. Any claim of error relative to showing the photographs at trial is without merit. Defendant's second point is denied.

In his third point, defendant contends the trial court erred in refusing to submit to the jury his proffered instructions on the lesser-included offenses of second degree murder/sudden passion and of voluntary manslaughter. The trial court gave a conventional murder in the second degree instruction patterned on MAI–CR3d 313.04.

■ The trial court's refusal to give the instructions did not result in prejudice to defendant. A murder in the second degree instruction, with the "sudden passion" paragraph, specifically excludes sudden passion and is used to justify the giving of a voluntary manslaughter instruction. *See* MAI–CR3d 313.04, Notes on Use 4; *see also* § 565.023.1, RSMo (1986). By its verdict, however, the jury found that defendant acted after "deliberation, which means cool reflection upon the matter for any length of time no matter how brief...." *See* MAI–CR3d 313.02; *see also* § 565.-002(3), RSMo (1986). "Sudden passion" is defined as "passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation...." § 565.002(7), RSMo (1986). Sudden passion is obviously the antithesis of deliberation. Under the instructions given by the trial court, the jury had the opportunity to convict defendant of second degree conventional murder, but did not do so. Because the jury never reached murder in the second degree, the failure to give the instructions proffered by defendant is academic. *See State v. Griffin*, 756 S.W.2d 475, 485 (Mo. banc 1988), *cert. denied*, 490 U.S. 1113, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1989). Defendant's third point is denied.

■ In his fourth point, defendant contends that the trial court erred in submitting an instruction patterned on MAI–CR3d 302.04, which defined "proof beyond a reasonable doubt" as "proof that leaves you firmly convinced of the defendant's guilt." This point is raised as plain error. Rule 30.20. Defendant argues that the instruction lowers the State's burden of proof in a criminal case. The Supreme Court of Missouri rejected this identical argument. *See, e.g., State v. Antwine*, 743 S.W.2d 51, 62–3 (Mo. banc 1987). Defendant's final point is denied.

The judgment of the trial court is affirmed.[1]

PUDLOWSKI and GRIMM, JJ., concur.

---

**1.** Defendant's appeal from the court's ruling on his Rule 29.15 motion is dismissed for failure to brief any arguments with regard to that appeal.