**STATE of Missouri, Plaintiff–
Respondent,**

v.

**Jerome WILHITE, Defendant–Appellant.**

**No. 60614.**

Missouri Court of Appeals,
Eastern District,
Division Two.

July 27, 1993.

Emily N. Blood, St. Louis, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michael J. Runzi, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Judge.

Appellant, Jerome Wilhite, was tried before a jury and convicted of one count of murder in the second degree, one count of assault in the first degree, and two counts of armed criminal action, and was sentenced to life imprisonment plus forty-five years.

Appellant raises four points for reversal. First, appellant claims that the trial court abused its discretion in admitting photographs of the murder victim. Second, appellant alleges that the trial court clearly erred in denying his motion to quash the jury panel because the prosecutor exercised the state's peremptory strikes in a racially discriminatory manner. Third, appellant contends that the trial court erred by overruling his motion to dismiss or, in the alternative, to stay the proceedings because there was a substantial failure to comply with the declared policies of §§ 494.400–494.505, RSMo Supp.1992 in the grand and petit jury selection procedures. Finally, appellant challenges the "reasonable doubt" instruction modeled on MAI–CR3d 302.04. We deny all four of appellant's points, and affirm the conviction.

The evidence adduced at trial showed that appellant had been affiliated with the Bloods gang and had committed a drive-by shooting. He had rapidly fired several gun shots from a car window. One of these shots had fatally struck a woman in the head.

I. Admission of Photographs

In point one, appellant claims that the trial court erred in admitting photographs of the victim's head which depicted the bullet entry wounds. He contends that the photographs were inflammatory and that their probative value was outweighed by their prejudicial nature. We disagree.

The trial court is vested with broad discretion in the admission of photographs. *State v. Feltrop*, 803 S.W.2d 1, 10 (Mo. banc 1991) *cert. denied,* —— U.S. ——, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). The admission of photographs is a discretionary act and will be found erroneous only if the ruling resulted in fundamental prejudice and an abuse of discretion. *State v. Padberg*, 723 S.W.2d 43, 45 (Mo.App. E.D.1986).

Photographs are admissible if probative of any material fact. *Padberg*, 723 S.W.2d at 45.

"If a photograph is relevant it should not be excluded because it may be inflammatory, unless the situation is so unusual that the extent of the prejudice overrides the photograph's probative value." Murray, 744 S.W.2d at 772.... "Insofar as the photographs tend to be shocking or gruesome it is because the crime is of that sort."

... Defendants may not so easily escape the brutality of their own actions; gruesome crimes produce gruesome, yet, probative photographs.

*Feltrop*, at 11. "[A] photograph is not rendered inadmissible because other evidence may have described what is shown in the photograph; nor is the state precluded from introducing the photograph because the defendant expresses a willingness to stipulate to some of the issues involved." *Feltrop*, 803 S.W.2d at 10 (citation omitted). Photographs may be admitted into evidence to show the nature and location of wounds, to corroborate or refute testimony, *Padberg*, 723 S.W.2d at 45, to depict the condition or location of the body, to enable

the jury to better understand testimony, or to establish any element in the State's case. *Feltrop*, 803 S.W.2d at 10.

In this case, the photographs were admitted to show the nature and location of wounds. After the photographs were entered into evidence, Dr. Burch referred to them in explaining his testimony about the cause of death and the nature of the wounds.

Our decision acknowledges the superior vantage point occupied by the trial court for balancing the probative value against the possible prejudice of demonstrative evidence. Accordingly, we hold that the trial court did not abuse its broad discretion in admitting the photographs into evidence. Point one is denied.

## II. Batson Challenge

In point two, appellant contends that his motion to quash the jury panel should not have been denied because the prosecutor exercised the state's peremptory strikes in a racially discriminatory manner in violation of appellant's Fourteenth and Sixteenth Amendment rights of equal protection.

■ The trial court's findings, as to whether an attorney discriminated in the exercise of a peremptory challenge, will be set aside only when the reviewing court is firmly convinced that the trial court's determination was clearly erroneous. *State v. Kilgore*, 771 S.W.2d 57, 62 (Mo. banc 1989).

"[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Thus, if the trial court's "account of the evidence is plausible in light of the record viewed in its entirety, [an appellate] court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."

*State v. Antwine*, 743 S.W.2d 51, 67 (Mo. Banc 1987) (citations omitted).

■ The decisive question in the typical peremptory challenge inquiry is whether counsel's race-neutral explanation for the challenge will be believed. *State v. Davis*, 835 S.W.2d 525, 527 (Mo.App.E.D. 1992). Seldom will there be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. *Id.*

As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province. *Hernandez [v. New York]*, [—— U.S. ——] 111 S.Ct. [1859] at 1869 [114 L.Ed.2d 395].... [T]he trial court's ability to assess the credibility of the prosecutor plays a major role in determining the validity of a Batson challenge....

*Davis*, 835 S.W.2d at 527.

■ Trying a criminal defendant before a jury from which members of defendant's race have been purposefully excluded, denies that defendant equal protection of the law because it denies that person the very protection that a trial by jury is intended to secure. *State v. Parker*, 836 S.W.2d 930, 933 (Mo. banc 1992). In addition, discrimination in jury selection violates the Constitutional rights of the excluded venirepersons by denying them the opportunity to participate in the administration of justice on an equal footing with other citizens. *Id.*

■ A *Batson* challenge requires a three-step procedure. First, the objector must raise a *Batson* challenge with regard to one or more specific venireperson(s) struck by the opposing side, and the objector must identify with the cognizable racial group to which the venireperson(s) belong(s). *Parker*, 836 S.W.2d at 939. Second, the trial court will then require the opposing side to present a reasonably specific and clear race-neutral explanation for the strike. *Id.* Finally, assuming the responding attorney is able to articulate acceptable reasons for the strike, the objector will need to show that the proffered reasons were pretextual and that the strike was racially motivated. *See Id.*

To be sufficient the proffered explanation " 'need only be race-neutral, reasonably specific and clear, and related to the particular case to be tried.' " *Id.* at 934 (citation omitted). Unless a discriminatory intent inheres in the attorney's explanation, the reasons offered will be deemed race-neutral. *Id.* Even though the explanation may result in the disproportionate removal of minority venirepersons, disparate impact alone will not convert a facially race-neutral explanation into a *per se* violation of equal protection. *Id.* The attorney's " 'explanation need not rise to the level of justifying [the] exercise of a challenge for cause.' " *Antwine,* 743 S.W.2d at 65 (quoting *Batson v. Kentucky,* 476 U.S. 79, 97, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986)). An attorney will be allowed to exercise peremptory challenges on the basis of the attorney's legitimate "hunches" and past experience, so long as racial discrimination is not the motive. *Antwine,* 743 S.W.2d at 65. Jury selection is an art, not a science. *Id.* at 64. By their very nature, peremptory challenges require subjective evaluation of venirepersons by counsel. *Id.*

In determining whether the objecting party has carried the burden of proof and established the existence of purposeful discrimination, the trial court should take account of a variety of factors. *Parker,* 836 S.W.2d at 939. The chief consideration should be the plausibility of responding counsel's explanation in light of the totality of the facts and circumstances surrounding the case. *Id.*

Any facts or circumstances that detract from or lend credence to the prosecutor's proffered explanation are, therefore, relevant.... The degree of logical relevance between the proffered explanation and the case to be tried in terms of the kind of crime charged, the nature of the evidence to be adduced, and the potential punishment if the defendant is convicted is likewise important. The prosecutor's demeanor or statement's during voir dire, as well as the demeanor of the excluded venirepersons should be considered. The court's past experiences with the prosecutor might also be relevant.

Objective factors such as the conditions prevailing in the community and the race of the defendant, the victim, and the material witnesses, are also worthy of consideration.

... [T]he state's failure to use all its strikes against venirepersons of a racial minority, or the presence of a racial minority on the defendant's jury, are relevant factors for consideration only to the extent that they indicate that race was not the prosecutor's motive for the challenged strikes.

*Parker,* 836 S.W.2d at 939–940 (citations omitted).

In the present case, appellant challenges two of the prosecutor's peremptory strikes. The prosecutor provided a race-neutral explanation for the removal of each of the two venirepersons.

As to the first person struck, the prosecutor explained that the venireperson was wearing a red and black colored sweatsuit. The prosecutor voiced concern that the venireperson may be affiliated with or sympathetic to the Bloods gang, whose members often dress in sweat-suits of that color. To explain the second strike, the prosecutor stated that the venireperson was a friend of another venireperson who had earlier been struck for cause. This former venireperson was struck for cause because she did not feel that she could sit in judgment of a person accused of murder. Since the two were friends, the prosecutor feared that they might share some of the same philosophies. In addition, the prosecutor noted that it is his policy to attempt not to leave unemployed persons on the jury, because he believes that unemployed persons do not have as "strong a tie" to the community. The second person struck was unemployed.

After having the opportunity to judge the demeanor and the credibility of the counselors, the trial court ruled that the explanations were race-neutral and sufficient to deny appellant's *Batson* challenge.

We note that all indications from the record support the trial court's decision as not clearly erroneous. Throughout the tri-

al, the color of clothing worn to display gang affiliation was a prevalent issue. Moreover, the record does not show that there were any similarly situated venirepersons not of appellant's race who were not struck. Another indication that race was not motivating the prosecutor was the composition of the final jury panel. It consisted of five members of appellant's race and seven members of a different race. In addition, most of the witnesses and persons involved in the case were of the same race as appellant. We hold, therefore, that the trial court did not clearly err when it allowed the prosecutor to rely on "hunches" and past experience to remove these two venirepersons. Point two denied.

We have previously considered the other two issues presented by appellant in numerous opinions and conclude that they lack merit to warrant further discussion.

Conviction AFFIRMED.

CRANDALL, P.J., and GRIMM, J., concur.