**STATE of Missouri, Respondent,**

v.

**Nathan E. HAWKINS, Appellant.**

**No. ED 76820.**

Missouri Court of Appeals,
Eastern District,
Northern Division.

April 3, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 24, 2001.

Case Transferred to Supreme Court June 26, 2001.

Case Retransferred to Court of Appeals Oct. 23, 2001.

Original Opinion Reinstated Nov. 5, 2001

---

Nancy A. McKerrow, Asst. Public Defender, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Susan K. Glass, Asst. Atty. Gen., Jefferson City, MO, for respondents.

MARY RHODES RUSSELL, Judge.

Nathan E. Hawkins ("Defendant") appeals from the judgment entered following a jury verdict convicting him of first degree murder in violation of section 565.020 RSMo 1994 and armed criminal action in violation of section 571.015 RSMo 1994. The trial court sentenced Defendant to consecutive terms of life imprisonment without parole and life imprisonment. We affirm.

The State charged Defendant with first degree murder and armed criminal action in the shooting death of Eric Cooper by a handgun on or about November 10, 1998. Defendant does not challenge the sufficiency of the evidence. In summary, Defendant fired one shot while Cooper was in the front passenger seat of a parked vehicle outside Defendant's home. Cooper died from a bullet wound to the head.

During trial, the State introduced an autopsy photograph of Cooper and five photographs of the inside of the vehicle after the shooting. The State also introduced at trial 9mm shell casings taken from Defendant's home during execution of a search warrant, rap lyrics that were taken off the refrigerator in Defendant's home during execution of the search warrant, and certain statements Defendant made after his arrest. The trial court gave verdict directing instructions for first degree murder, second degree murder, and armed criminal action with respect to both of those murder offenses, as well as a separate self-defense instruction. The jury convicted Defendant of first degree murder and armed criminal action, and recommended sentences of life imprisonment without parole and life imprisonment, respectively. The trial court subsequently overruled Defendant's motion for new trial and post-trial motion for judgment notwithstanding the verdict, and sentenced Defendant to consecutive terms of life without parole and life. This appeal followed.

■ In his first point on appeal, Defendant urges that the trial court erred in giving the verdict directing instructions for murder in the first degree and murder in the second degree. Specifically, Defendant points to (1) the failure of those instructions to cross-reference the self-defense instruction, and (2) the inclusion in the second degree murder verdict director of "sudden passion" language, specifically paragraph Third of Instruction No. 6, in the absence of a voluntary manslaughter instruction. As Defendant did not object to the instructions during trial or in his motion for new trial as required by Rule 28.03, he now seeks plain error review under Rule 30.20.

Rule 30.20 provides, in pertinent part, that "plain errors affecting substantial rights may be considered in the discretion of the trial court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." There has been some confusion, however, as to whether Rule 30.20 is trumped by Rule 28.03,[1] which provides:

Counsel shall make specific objections to instructions or verdict forms considered erroneous. No party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Counsel need not repeat objections already made on the record prior to delivery of the instructions and verdict forms. The objections must also be raised in the motion for new trial in accordance with Rule 29.11.

This issue was recently addressed by the Supreme Court of Missouri, which held that claims of error not preserved under Rule 28.03 may still be reviewed for plain error if manifest injustice would otherwise occur. *State v. Wurtzberger,* 40 S.W.3d 893, 898 (Mo. banc 2001). Accordingly, we review Defendant's point for plain error.

---

**1.** See *State v. Bradshaw,* 26 S.W.3d 461, 471 (Mo.App.2000); *State v. Martindale,* 945 S.W.2d 669, 673 (Mo.App.1997).

Our discretion to reverse a conviction on the basis of plain error should be used sparingly. *State v. Santillan,* 1 S.W.3d 572, 578 (Mo.App.1999). Instructional error seldom rises to the level of plain error. *State v. Wright,* 30 S.W.3d 906, 912 (Mo.App.2000). A defendant must go beyond a mere demonstration of prejudice and establish that the instructional error affected the jury's verdict. *Id.*

In reviewing Defendant's claim that neither verdict director cross-referenced the self-defense instruction that was given, we look at the two verdict directors.

Instruction No. 5, the first degree murder verdict director, stated:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about November 10, 1998, in the County of Monroe, State of Missouri, the defendant caused the death of Eric Cooper by shooting him with a handgun, and

Second, that defendant knew that his conduct was practically certain to cause the death of Eric Cooper, and

Third, that defendant did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief,

then you will find the defendant guilty under Count I of murder in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of murder in the first degree.

If you do find the defendant guilty under Count I of murder in the first degree, you are to assess and declare the punishment at imprisonment for life

without eligibility for probation or parole.

Instruction No. 6, the second degree murder verdict director, stated:

As to Count I, if you do not find the defendant guilty of murder in the first degree, you must consider whether he is guilty of murder in the second degree.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about November 10, 1998, in the County of Monroe, State of Missouri, the defendant caused the death of Eric Cooper by shooting him with a handgun, and

Second, that defendant knew that his conduct was practically certain to cause the death of Eric Cooper, and

Third, that defendant did not do so under the influence of sudden passion arising from adequate cause,

then you will find the defendant guilty under Count I of murder in the second degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of murder in the second degree.

As used in this instruction, the term "sudden passion" means passion directly caused by and arising out of provocation by Eric Cooper which passion arose at the time of the offense and was not solely the result of former provocation. The term "adequate cause" means cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control.

If you do find the defendant guilty under Count I of murder in the second

degree, you will assess and declare one of the following punishments:

1. Life imprisonment

2. Imprisonment for a term of years fixed by you, but not less than ten years and not to exceed thirty years.

■ The failure to include in a verdict director a cross-reference to a separate defense instruction, as required by the MAI Notes on Use, may constitute reversible error when the error is properly preserved. *State v. Foster*, 631 S.W.2d 672, 675 (Mo.App.1982) (reversing for failure to cross-reference a mistake of fact defense instruction in a verdict director for rape). The absence from a verdict director of an explicit cross-reference to a separate defense instruction, however, has not been viewed as plain error. *State v. Dunlap*, 706 S.W.2d 272, 277 (Mo.App.1986); *State v. Cooksey*, 805 S.W.2d 709, 710–11 (Mo. App.1991).

In *Dunlap* the defendant was found guilty, as charged, of each of two counts of assault. *Dunlap*, 706 S.W.2d at 273. The verdict directing instructions failed to include a cross-reference to the intoxication defense instruction. *Id.* at 277. We noted that the Notes on Use for the pattern intoxication defense instruction stated that if that defense instruction was given " 'the verdict directing instruction must contain a paragraph cross-referencing to' " it. *Id.* (*quoting* MAI–CR2d 3.30.1, Notes on Use 6). After considering "the instructions as a whole" [2] and the closing argument of defense counsel, we concluded that no manifest injustice resulted from the omission of the required cross-reference. *Id.* Specifically, we concluded that defense counsel had made numerous references to

"defendant's drugged condition," including a clear reference to instruction language requiring the jury to find defendant not guilty if the jury found he was in such a drugged condition that he did not know what he was doing. *Id.*

In *Cooksey*, the defendant was convicted of one of the two charged offenses. *Cooksey*, 805 S.W.2d at 709–10. The Western District found that the absence from verdict directing instructions of cross-references to an affirmative defense instruction was not plain error, although it did violate Rule 28.02(f) and the Notes on Use for the relevant pattern affirmative defense instruction, entitled "Justification: Emergency Measures." *Cooksey*, 805 S.W.2d at 711. Specifically, the court noted that the Notes on Use for that instruction stated " 'there will be a cross reference in the verdict director' " if the affirmative defense instruction is given. *Id.* (*quoting* MAI–CR3d 308.20, Notes on Use 5). The Western District concluded that the transcript showed the jury was aware of the affirmative defense instruction through the closing arguments of both attorneys; defendant had failed to show that the jury either was unaware of the affirmative defense instruction or failed to use it in deliberating; and defendant had not convincingly demonstrated prejudice sufficient to reverse under the plain error standard. *Id.*

■ As in those cases, we find no plain error here in the omission from the verdict directing instructions of cross-references to the separate self-defense instruction given to the jury. No one questions that the evidence supported a self-defense instruction. The self-defense instruction

---

2. With respect to the instructions, we rejected the State's argument that there was no prejudice from the omission due to the presence in the intoxication defense instruction of cross-references to the verdict directors. *Dunlap*, 706 S.W.2d at 277. While we acknowledged that the State's position had logic, we pointed out that, if such a cross-reference was sufficient, "there would be no reason to require a reference in the verdict director." *Id.*

given in this case was modeled after MAI–CR3d 306.06, entitled "Justification: Use of Force in Self–Defense." The Notes on Use for that instruction provide in relevant part that the instruction "must be given" when evidence supports the defense and "[a] paragraph making a cross-reference to this instruction will be added to the verdict director" as specified. MAI–CR3d 306.06, Notes on Use 2. While lack of a cross-reference in the verdict directors does not comply with the pattern self-defense instruction's Notes on Use, the attorneys in this case clearly referred the jury to and discussed self-defense during their closing arguments, including making specific references to the self-defense instruction. After reviewing the instructions as a whole and the closing arguments, we conclude, as in *Dunlap*, that there was no manifest injustice or miscarriage of justice in the omission from the verdict directors of a cross-reference to the separate defense instruction. Additionally, as the Western District found in *Cooksey*, we find that the record reveals the jury was aware of the self-defense instruction through counsel's closing arguments, and Defendant has failed to show that the jury either was unaware of or failed to use the self-defense instruction during its deliberations.

Defendant next argues that the trial court plainly erred in giving Instruction No. 6, the second degree murder verdict director that included the phrase "did not do so under the influence of sudden passion," without giving an instruction on voluntary manslaughter. Defendant claims that the "sudden passion" language confused the jury and caused the jury to convict him of the higher offense of first degree murder.

The inclusion of "sudden passion" language in a second degree murder instruction "is used to justify the giving of a voluntary manslaughter instruction."

*State v. Ottwell,* 852 S.W.2d 370, 373 (Mo. App.1993). That is, the second degree murder instruction must include "sudden passion" language when there is evidence supporting a finding that the defendant caused the death of the victim under the influence of sudden passion arising from adequate cause. MAI–CR3d 313.04, Notes on Use 4. The trial court here, however, was not asked to and did not instruct on voluntary manslaughter.

Defendant asserts that the jurors could have been confused by the usage of the "sudden passion" language in the instruction as no mention of those words had been made before by either counsel. In their closing arguments, the prosecutor referred to the crime as either "a cold-blooded crime" or "a hot-blooded crime . . . [or] a spontaneous thing," and defense counsel asked the jury how it could determine that "this [was] not a hot-blooded crime."

In the absence of a voluntary manslaughter instruction, Defendant contends the jurors could have construed the term "cold-blooded" as synonymous with first degree murder, and "hot-blooded" as synonymous with second degree murder. Moreover, the jurors could have considered the term "sudden passion" as a more legally correct way of saying "hot-blooded." Thus, Defendant argues, the jury could have concluded that the third paragraph of Instruction No. 6 should have read, "Third, that defendant *did* so under the influence of sudden passion arising from adequate cause."

Defendant claims that the jurors' confusion is evidenced by the fact that, during deliberations, the jury sent the trial court a note saying: "Please clarify on instruction 6 part 3, is the DID NOT DO SO the correct verbage [sic] describing second degree murder? Does the word not belong in this statement?" The jury also sent out Instruction No. 6 with paragraph Third

circled, the "did not do so" portion of that paragraph underlined, and a question mark placed in the left margin next to the circled paragraph.

After consulting with counsel, the trial court responded to the jury's note, stating: "You must be guided by the instructions previously given by the Court." Neither party objected to the court's response.

The State argues that we should not consider error in the second degree murder verdict director because Defendant was convicted of first degree murder, a greater offense. This argument is based on the general rule that a conviction of a higher degree of a crime renders any error in an instruction on a lower degree of the crime not prejudicial, unless the error prevents a conviction of the lesser crime. *State v. Kinnard,* 671 S.W.2d 336, 338 (Mo.App.1984).

■ We find that the "sudden passion" language contained in Instruction No. 6 did not prevent the jury from convicting Defendant of second degree murder. The instruction correctly stated the elements of second degree murder and correctly stated the law that Defendant "did not do so under the influence of sudden passion." The existence of "sudden passion" would convert what would normally be second degree murder into voluntary manslaughter instead. *State v. Jacoway,* 11 S.W.3d 793, 797–98 (Mo.App.1999).

Although the jury questioned the wording of the instruction in light of the remarks made during closing arguments and in the absence of a voluntary manslaughter instruction, nothing prevented a conviction of second degree murder. When the jury expressed its concerns, the court, without objection by either party, instructed the jurors to follow the instructions as given. Assuming the jurors did so, the "sudden passion" language would not have prevented a conviction of murder in the second

degree. Under a plain error standard of review, Defendant has shown no manifest injustice or miscarriage of justice. Point denied.

In his second point, Defendant contends the trial court erred in overruling his motion to suppress evidence and statements, and in overruling objections to and admitting certain evidence and statements resulting from a search of his home pursuant to an allegedly improperly issued search warrant. Specifically, Defendant contends: the affidavit supporting the search warrant was based on third-hand hearsay and provided no basis for ascertaining the sources' veracity and basis of knowledge; the warrant did not authorize the seizure of rap lyrics; and his statements were obtained as a direct result of the illegal search.

Within hours of the shooting, at 6:20 a.m. on November 10, 1998, a judge issued a warrant to search a "**single wide house trailer rented by Nathan E. Hawkins, located at 414 East Dover St, within Quinn's trailer park in Monroe City, Missouri, described more specifically as the third trailer East on Dover Street**" for the following evidence of first degree assault: "**[s]pent and unspent ammunition and a hand gun, as well as clothing containing blood spattering, and paperwork and maps indicating travel plans or an escape route and destination.**" The affidavit submitted in support of the search warrant stated in relevant part as follows:

Affiant has reasonable grounds to believe the ... materials are being kept and secreted at the above-stated premises [which was Defendant's trailer] because of the following:

Your affiant, Sheriff Gary Tawney, has been a peace officer with Monroe County, Missouri for the past 16 years.

He has been the elected Monroe County sheriff for six years.

On Nov 10, 1998, Nathaniel Hawkins allegedly shot Eric Cooper with a handgun at close range while Cooper sat in a motor vehicle parked between Cooper's trailer and Hawkins['s] trailer, according to eyewitnesses. Cooper remains in critical condition.

A witness saw Hawkins flee from the scene. It is reasonable that he ran back into his residence, which was next to the shooting. Although affiant does not know that Hawkins is still in the trailer, it is also reasonable, based upon affiant's experience and training, that Hawkins may have exchanged clothing and may have left behind other evidence prior to fleeing his residence, such as the weapon, unused ammunition, spent casings, and maps or plans indicating an escape route or plan.

Affiant has obtained information indicating that no person other than Hawkins permanently resides at the above listed residence.

In order to properly obtain and preserve possible evidence, as well as to determine the location of Hawkins as soon as possible for questioning regarding the assault, any such evidence that may be found in the house should be obtained immediately.

**On the basis of the above-listed circumstances and observations, your affiant is requesting the authority to search the trailer home listed above, and to seize all previously listed evidence and property for processing, safekeeping, and use during any subsequent prosecution in this matter.**

After an evidentiary hearing, the trial court overruled Defendant's pretrial motions to suppress evidence and statements. During trial, the trial court allowed, over Defendant's objection, the introduction of evidence obtained during or resulting from the search, including the rap lyrics seized from Defendant's refrigerator and Defendant's post-arrest statements. Defendant presented in his post-trial motion his challenges to the trial court's disposition of both the motions to suppress and Defendant's objections at trial to the use of evidence gained through the search pursuant to the warrant.

"The Fourth Amendment of the U.S. Constitution guarantees that 'no warrant shall issue but upon probable cause.'" *State v. Hill*, 929 S.W.2d 258, 262 (Mo.App.1996). When deciding whether there is probable cause to issue a search warrant, the issuing judge makes a "'practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. Ford*, 21 S.W.3d 31, 35 (Mo.App.2000) (*quoting Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Importantly, an issuing judge may "draw reasonable inferences concerning where the evidence referred to in the **affidavit** is likely to be kept, taking into account the nature of the evidence and the offense." *State v. Miller*, 14 S.W.3d 135, 138 (Mo.App.2000) (*quoting U.S. v. Singleton*, 125 F.3d 1097, 1102 (7th Cir. 1997), cert. denied sub nom., *Sanchez Cox v. U.S.*, 522 U.S. 1098, 118 S.Ct. 898, 139 L.Ed.2d 833 (1998)). Moreover, probable cause does not require proof that illegal activity or evidence of a crime is actually at the location subject to search, only the probability that such activity or evidence is there. *Id.* "Common sense is a key ingredient in considering the absence or presence of probable cause." *Ford*, 21 S.W.3d at 35.

As a reviewing court, we determine whether the judge issuing the search warrant "had a substantial basis for concluding that probable cause existed." *Id.*; *Hill*, 929 S.W.2d at 262. Our review is not de novo because "the existence of probable cause in a particular case is a question of fact." *State v. Meyers*, 992 S.W.2d 246, 248 (Mo.App.1999). We examine the four corners of the supporting affidavits, and give great deference to the issuing judge's determination of probable cause. *Hill*, 929 S.W.2d at 262. We reverse only when a clear error in the issuing judge's determination is shown. *Ford*, 21 S.W.3d at 35.

Defendant urges the affidavit here does not disclose the source of affiant's information; does not identify those providing information, beyond characterizing them as eyewitnesses or a witness; and does not demonstrate a basis for finding probable cause that any evidence of a crime would be in his home. As to the latter, Defendant urges there is no averment anyone saw him go into his home after the shooting or that anyone heard noises inside his home or had another indication he might be in his home after the shooting.

Defendant relies on *State v. Hammett*, 784 S.W.2d 293 (Mo.App.1989), to support his position the affidavit in this case does not establish probable cause for the search warrant. In *Hammett*, the affiant for a search warrant relied on information received from an anonymous informant who received the information from his wife who "allegedly received [it] from an unidentified 'lady,' who allegedly obtained it from defendant's mother." *Id.* at 296. While we noted in *Hammett*, the informant's veracity would have been sufficiently established if he had conveyed first hand observations of facts, we concluded the affidavit was insufficient to determine the veracity of the informant's statements because there was no information presented to credit the second, third, and fourth levels of hearsay. *Id.* Additionally, we concluded the affidavit did not contain detailed facts sufficient to establish the basis for the informant's conclusion there would be illegal drug activity on the defendant's property, and there was no corroboration of the "fourth-hand information." *Id.* We held the affidavit was insufficient to support issuance of the search warrant. *Id.*

*Hammett* is distinguishable due to the absence of four levels of hearsay and the circumstances necessitating the search. Here, the offense had occurred just hours before the issuance of the search warrant and the search was for evidence pertaining to that offense and Defendant's flight from the scene. Looking only at the affidavit itself, the affiant relied on hearsay information from individuals who saw the shooting and Defendant's flight from the scene.[3] A witness to or victim of a crime is a reliable informant for establishing probable cause, even if such an individual's reliability is not previously established. *State v. Ard*, 11 S.W.3d 820, 828 (Mo.App.2000). In this situation, the issuing judge could reasonably infer evidence of the crime would probably be located in Defendant's residence because it was adjacent to the crime scene. Thus,

---

3. Defendant points to testimony presented at the hearing on his motions to suppress to demonstrate affiant did not personally speak to the witnesses but obtained their information from a law enforcement officer investigating the shooting. We will not consider that testimony because we do not look beyond the four corners of the affidavit to ascertain whether or not there was a substantial basis for finding probable cause to issue the search warrant. *See Hill*, 929 S.W.2d at 262. Even if we consider that disclosure, another law enforcement officer investigating the offense is a reliable source of information for a search warrant. *State v. Williams*, 9 S.W.3d 3, 16 (Mo.App.1999).

the fact affiant concluded it was "reasonable" that Defendant "ran back into his residence[,] ... exchanged clothing and may have left behind other evidence prior to fleeing his residence" is not fatal to the probable cause determination.

We find the affidavit in this case more akin to the one approved in *Hill, supra,* than to the one disapproved in Hammett, supra. In *Hill,* a deputy sheriff affiant revealed that he had received information from a "concerned citizen," who was familiar with marijuana's appearance and smell, that the citizen had smelled the odor of marijuana inside the defendant's home and that marijuana and drug paraphernalia "had been seen" in that home previously. *Hill,* 929 S.W.2d at 263. The only other information provided by affiant was that the location of the defendant's home as disclosed by the "concerned citizen" was the location known by affiant to be the defendant's residence. *Id.* Affiant did not convey how he knew the location was the defendant's residence. A judge issued a search warrant for the defendant's home within three days of the affiant's receipt of the information. *Id.* We concluded the affidavit provided sufficient information to support a finding of probable cause and upheld the search warrant. *Id.* Similarly, in this case the law enforcement affiant reveals information from those having personally seen the shooting and Defendant's flight from the scene, and verifies Defendant is the only person permanently residing at his home.

In view of the deference we accord the issuing judge and the information provided in the affidavit supporting the search warrant, we conclude the judge had a substantial basis for concluding probable cause existed to support the search warrant. There has been no showing of clear error in that determination. Based on these conclusions, we do not address Defendant's

arguments regarding the "good faith" exception to the exclusionary rule or that his statements must be suppressed as "fruit of the poisonous tree." *State v. Laws,* 801 S.W.2d 68, 71 (Mo. banc 1990).

Defendant also urges that the seizure of the rap lyrics attached to the front of his refrigerator went beyond the scope of the search warrant in that they were not specifically mentioned in the warrant and did not constitute "paperwork indicating travel plans or an escape route/destination."

■ An item not expressly mentioned in a search warrant may be seized if the officer is lawfully located where the seized object can plainly be seen and there is probable cause to believe the object is connected to the crime. *State v. Middleton,* 995 S.W.2d 443, 458 (Mo. banc 1999), *cert. denied,* 528 U.S. 1054, 120 S.Ct. 598, 145 L.Ed.2d 497 (1999). In *Middleton,* a first degree murder case, the Missouri Supreme Court upheld the seizure of a bill of sale for a pickup truck, a "list of local law enforcement officers and their radio frequencies," and a sunglass lens. *Id.* at 457–58. The search warrant in that case had directed the seizure from the defendant's residence of a gun, shotgun shells, and certain drugs. *Id.* at 457.

■ In this case, the police executing the search warrant were lawfully in Defendant's home, where the rap lyrics on the refrigerator were in plain view. The rap lyrics contained much profanity and references to retaliation, intentional killing, and use of guns. Therefore, the officers could have reasonably believed there was probable cause that the rap lyrics were connected to the crime. The seizure of the paper off the refrigerator containing the rap lyrics was proper. Point two denied.

For his third point, Defendant argues the trial court erred and abused its discretion in admitting into evidence an autopsy

photograph of the victim's head, and five photographs of the interior of the car where the shooting occurred, which showed blood spatters and brain matter. Defendant contends a model could have been used rather than the autopsy photograph, which was gory, showed the results of surgery rather than the location of the wound, and was unnecessary to establish the location of the wound. With respect to the five pictures of the automobile, Defendant urges they had no probative value because there was no dispute the victim was shot while in the car and the State did not lay a proper foundation for an officer's testimony about the blood and brain matter depicted.

Defendant pursued his objections to the admission of these photographs during trial and in his post-trial motion.

■■■■ The trial court has broad discretion in the admission of photographs. *State v. Rousan,* 961 S.W.2d 831, 844 (Mo. banc 1998), *cert. denied,* 524 U.S. 961, 118 S.Ct. 2387, 141 L.Ed.2d 753 (1998). We may find error in the admission or exclusion of evidence only when the trial court's broad discretion is clearly abused. *State v. Hall,* 982 S.W.2d 675, 680 (Mo. banc 1998), *cert. denied,* 526 U.S. 1151, 119 S.Ct. 2034, 143 L.Ed.2d 1043 (1999). An abuse of discretion exists when the trial court ruling "clearly offends the logic of the circumstance or appears arbitrary and unreasonable." *State v. Strughold,* 973 S.W.2d 876, 887 (Mo.App.1998).

■■■■ "Photographs are relevant if they show the scene of the crime, . . . the nature and extent of the wounds, the cause of death, [and] the condition and location of the body." *Rousan,* 961 S.W.2d at 844. Additionally, photographs may be admitted to corroborate or refute testimony, and to help the jury to better understand testimony. *State v. Wilhite,* 858 S.W.2d 293, 295 (Mo.App.1993). A relevant photo-

graph is not inadmissible because other evidence describes what is shown in the photograph or because it may be inflammatory. *Rousan,* 961 S.W.2d at 844. Nor must the State forego admission of a photograph because " 'the defendant expresses a willingness to stipulate to some of the issues involved.' " *Wilhite,* 858 S.W.2d at 295 (*quoting State v. Feltrop,* 803 S.W.2d 1, 10 (Mo. banc 1991), *cert. denied,* 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991)). "[A] photograph should not be excluded from evidence unless its prejudicial effect is greater than its probative value." *Rousan,* 961 S.W.2d at 844. Usually, if a photograph is shocking or gruesome, it is because the crime was shocking or gruesome. · *Id .*

■■■■ In a homicide prosecution, pictures of the head of the victim who was shot in the head are admissible. *Id.; Wilhite,* 858 S.W.2d at 295. In *Rousan,* the Missouri Supreme Court found a picture depicting a gunshot wound to the victim's head was properly admitted in that it showed the injuries sustained by the victim and aided the jury in understanding the pathologist's testimony. *Rousan,* 961 S.W.2d at 844. In *Wilhite,* we determined the admission of photographs of the homicide victim's head, which depicted bullet entry wounds, was not an abuse of the trial court's broad discretion. *Wilhite,* 858 S.W.2d at 295–96. The photographs were used to show the nature and location of wounds, and were referred to by a witness "in explaining his testimony about the cause of death and the nature of the wounds." *Id.* at 296.

■■■■ Here, the picture of the victim's head was admitted during the testimony of the medical examiner to indicate the location of the bullet wound. The examiner had testified the picture would help explain the entry wound. The other five chal-

lenged exhibits were introduced during the testimony of a sergeant with the Missouri State Highway Patrol who helped with the investigation of the shooting. These pictures depict blood splatters and human tissue on and around the front passenger side door, floorboard, and window of the car where Cooper was during the shooting. These exhibits helped the sergeant describe the crime scene and assisted the jury in understanding the sergeant's testimony.

Defendant has not convinced us the probative value of the challenged photographs was outweighed by any prejudicial effect they may have had. The photographs helped the medical examiner and an investigator with their testimony and assisted the jury in understanding that testimony, including the nature and location of the wound. Neither the fact Defendant did not dispute the victim was shot in the head while sitting in a parked vehicle, nor the fact other evidence established at least some of what is depicted in the photographs, prohibits the admission of the photographs. Nor does the fact the photographs may be gruesome, preclude their admission into evidence in light of the circumstances of the crime. The admission of these pictures was not a clear abuse of the trial court's broad discretion.

Point three denied.

In his fourth point, Defendant urges the trial court erred and abused its discretion in allowing the introduction and reading of the rap lyrics found on his refrigerator during the search of his home. Defendant urges the lyrics were irrelevant and prejudicial due to "their profane and violent content." Defendant objected to the introduction and reading of the rap lyrics both at trial and in his post-trial motion.

We find error in the admission or exclusion of evidence only when the trial court clearly abuses its broad discretion. *Hall,*

982 S.W.2d at 680. A trial court abuses its discretion when its ruling "clearly offends the logic of the circumstance or appears arbitrary and unreasonable." *Strughold,* 973 S.W.2d at 887.

The defendant's reputation as a peaceable person is relevant in a murder trial. *See State v. Manning,* 682 S.W.2d 127, 130–31 (Mo.App.1984). When a defendant takes the stand to testify in his own behalf, he is subject to contradiction and impeachment just like any other witness. *State v. Francis,* 997 S.W.2d 74, 78 (Mo.App.1999).

Defendant took the stand and testified on his own behalf during trial. During direct examination, Defendant explained that fighting was "not the way" he normally resolved "static or tension." On cross-examination, Defendant acknowledged that, before the shooting, he left his home to visit Cooper at a neighbor's trailer to "make peace" with Cooper because "that's the way" Defendant was. He wanted to make it better if someone was not getting along with him. He also testified "Fighting's not the way to solve things." Immediately after that testimony, the State sought to introduce the rap lyrics to contradict Defendant's statements reflecting that he was a peaceful person, because the lyrics "represent[ed] a certain violent attitude toward life." The trial court admitted the lyrics, over Defendant's objection, and permitted the prosecutor to read them to the jury. Under these circumstances, the lyrics were properly introduced to contradict Defendant's testimony regarding his peaceful nature.

In support of his position that the rap lyrics were improperly admitted, Defendant relies on our decision in *State v. Campbell,* 507 S.W.2d 431 (Mo.App.1974). We find that case inapposite. In *Campbell,* the defendant was convicted of exhib-

iting a dangerous and deadly weapon in a rude, angry and threatening manner. *Id.* The conviction arose out of the defendant's conduct in lunging a loaded shotgun toward the midsection of a police detective. *Id.* at 432. The shotgun was not discharged. *Id.* We found reversible error in the admission of a police detective's testimony "concerning his prior experience in examining a person who has been shot with a shotgun." *Id.* We concluded there was no need to establish that the shotgun exhibited by the defendant was dangerous or deadly because it was a "firearm" which was statutorily characterized as a dangerous or deadly weapon. *Id.* at 433. Therefore, there was reversible error in the detective's "vivid and emotionally charged description [which] was inflammatory, unnecessary and did not reasonably tend to prove or disprove any disputed fact issue." *Id.* In this case, however, we have found the rap lyrics may properly be considered to contradict Defendant's testimony of his peaceful nature. Thus, unlike the challenged testimony in *Campbell,* the rap lyrics were necessary to disprove a disputed fact. For similar reasons, we find Defendant's reliance on the Southern District's decision in *State v. Alexander,* 875 S.W.2d 924 (Mo.App.1994), unpersuasive.

 Even if the admission of the lyrics was erroneous, their admission did not constitute reversible error. We "reverse only if the error [in admitting the evidence] was so prejudicial that it deprived the defendant of a fair trial." *State v. Crump,* 986 S.W.2d 180, 188 (Mo.App. 1999). In light of the evidence available to the jury, we conclude the admission of the rap lyrics did not deprive Defendant of a fair trial.

The record reveals that Defendant admitted in his post-arrest statements and trial testimony that he shot Cooper. The evidence further indicates Cooper was shot after walking out of Defendant's neighbor's trailer where an argument regarding a prior incident with Cooper arose. Instead of leaving the area, going to his trailer home next door, or staying inside the neighbor's trailer until after Cooper left, Defendant went toward Cooper and shot him once in the head with a handgun as Cooper was trying to leave. Point four denied.

The judgment is affirmed.

AHRENS, J., concurs.

MARY K. HOFF, C.J., dissents in separate opinion.

MARY K. HOFF, Chief Judge, dissenting.

I dissent only to the extent the majority finds no plain error in the inclusion of paragraph Third and its "sudden passion" language in the second degree murder verdict director.

"Instructional error constitutes plain error when it is clear the trial court so misdirected or failed to instruct the jury ... that it is apparent the error affected the verdict." *State v. Beeler,* 12 S.W.3d 294, 300 (Mo. banc 2000). Recent Missouri cases have found reversible plain error in verdict directing instructions for the offense of which defendant was convicted. *Id.; State v. Ludwig,* 18 S.W.3d 139 (Mo. App.E.D.2000). We have also reversed a conviction for error in an instruction pertaining to a lesser included offense, even though the defendant had been convicted of a higher degree of the offense, when the error prevented conviction of the lesser crime. *State v. Kinnard,* 671 S.W.2d 336, 338 (Mo.App.1984).

Here, the inclusion in the second degree murder verdict director of paragraph Third and its "sudden passion" language requires reversal for plain error due to the

absence of a voluntary manslaughter instruction, the argument of counsel, and the jury's obvious confusion. As the majority notes, paragraph Third and its "sudden passion" language must be included in the second degree murder verdict director when there is evidence supporting a finding the defendant killed the victim under the influence of sudden passion arising from adequate cause. Additionally, a trial court is "required to give an instruction on voluntary manslaughter if there is sufficient evidence to support a finding that the defendant caused the death of the victim under the influence of sudden passion arising from adequate cause." *State v. Redmond*, 937 S.W.2d 205, 208 (Mo. banc 1996). In this dissent, I am not addressing whether there was evidence to support a voluntary manslaughter instruction but rather that paragraph Third and its sudden passion language should not be included in the second degree murder verdict director in the absence of a voluntary manslaughter instruction.

Here, it appears the jury believed it had no second degree murder option due to the second degree murder verdict director's language and the arguments of counsel. Counsel, in particular the prosecutor, clearly advised the jury this killing was either "cold-blooded" or "hot-blooded." The latter reference intimates a killing due to "sudden passion arising out of adequate cause." The instructions only gave the jury two options: first degree murder, which could be considered "cold-blooded"; and second degree murder. Due to counsel's argument, the jury might consider the second degree murder offense as the "hot-blooded" option. The second degree murder verdict director, however, did not allow a conviction for second degree murder if the jury found the case was "hot-blooded" or, in other words, involved "sudden passion arising out of adequate cause." The jury's inquiry of the trial court clearly questions the verdict director's requirement that second degree murder be found if the killing did *not* result from sudden passion arising out of adequate cause. That inquiry clearly shows the jury considered, and determined it had to reject, the second degree murder offense because, contrary to the guidance of counsel's argument, the verdict director for that offense expressly required the jury to find the killing involved no sudden passion. It is apparent that the instructional error may have affected the verdict in this case.

Under the circumstances, I find the paragraph Third language of the second degree murder verdict director may have prevented the jury from considering second degree murder and resulted in manifest injustice. Therefore, I would reverse and remand for a new trial on this ground. In all other respects, I concur in the majority opinion.